Hillsborough,
No. 4379.

MILDRED ALLEN & a. v. MANCHESTER & a.

Argued February 1, 1955.
Decided February 25, 1955.

*Paul E. Nourie* and *Bartram C. Branch* (*Mr. Nourie* orally), for the plaintiffs.

*J. Francis Roche,* city solicitor, for the defendants.

DUNCAN, J. In *Piasecny* v. *Manchester,* 82 N. H. 458, it was said that "municipal playgrounds . . . are public institutions open to enjoyment by all the people, from which the city . . . receives no special advantage." The same may be said of the municipal golf course maintained by the defendant city. See *Harkinson* v. *Manchester,* 90 N. H. 554. It was created for public recreational purposes, and is supported by public funds. Like a park or playground, it is "for the enjoyment of the general public at large" (*Strachan* v. *Mayor,* 326 Mass. 659, 662) and its use may be regulated to secure that end. *People* v. *Ribinovich,* 171 Misc. 569, 13 N. Y. S. (2d) 135, 138.

The enabling legislation under which the golf course is conducted authorizes the city to establish reasonable tolls for the use of "fields" managed by it. Laws 1927, c. 244, s. 3. The defendant board was established "to carry out the provisions" of the enabling act. *Id., s.* 4. It has "full charge and supervision" over the golf course, the expenditure of appropriations made for the purpose,

and authority "to establish such rules and regulations as they may deem proper for the efficient supervision and management of said recreation . . . fields." *S.* 6. The statute thus permits the adoption of regulations designed to make the golf course available for recreation and "enjoyment by all the people," consistently with efficient, safe, and orderly operation. Nondiscriminatory rules and regulations calculated to further this object are clearly within the grant of authority to the board.

The real issue is whether the regulation of which the plaintiffs complain is discriminatory, so as to deprive them of their constitutional right to the equal protection of the laws. Their evidence tended to show that they and other women similarly affected by the regulation are regularly employed on week days, and by the regulation are deprived of an opportunity to play golf during hours likely to be available to them, and considered by them most suitable, for that purpose. Men golfers, on the other hand, are permitted to play during the hours in question. Such classification according to sex, they urge, is invalid.

The validity of the regulation depends upon whether the curtailment of the plaintiffs' rights or privileges can be justified as a reasonable measure in furtherance of the public interest, or the general welfare. See *Cloutier* v. *Milk Control Board,* 92 N. H. 199, 205, 206. The plaintiffs urge that the regulation is invalid because the trustees were motivated only by a desire "to secure more income from the course"; but granting that such a purpose was a factor in the action taken which would not of itself justify the regulation, it was not necessarily invalid upon that account. "The passage of public ordinances, by-laws, rules and regulations is a form of enacting legislation. The general rule is that if a law is valid when its maker is actuated by right motives, it is equally so when he is not." *Coleman* v. *School District,* 87 N. H. 465, 471.

Under the State Constitution, as under the Fourteenth Amendment to the Constitution of the United States, "persons similarly situated are guaranteed similarity of treatment." *Welch Co.* v. *State,* 89 N. H. 428, 431, aff. 306 U. S. 79. "Classification to be valid must reasonably promote some proper object of public welfare or interest and may not be sustained when the selection and grouping is so arbitrary as to serve no useful purpose of a public nature." *Opinion of the Justices,* 85 N. H. 562, 564. See also, *Woolf* v. *Fuller,* 87 N. H. 64, 72; *Rosenblum* v. *Griffin,* 89 N. H. 314, 321. It must rest upon some ground of difference having a "fair

and substantial relation" to the object of the legislation. *State v. Moore*, 91 N. H. 16, 22. See also, *Chronicle &c. Publishing Co. v. Attorney General*, 94 N. H. 148, 151; *Richardson v. Beattie*, 98 N. H. 71, 76. Not every legislative classification is within the ban of the constitutional limitations (*Welch Co. v. State, supra*), and a distinction is not arbitrary "if any state of facts can reasonably be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed." *State v. Moore, supra*.

Within these principles, the object and effect of the regulation adopted by the defendants become of controlling importance. The plaintiffs assert that its only object was to increase the speed of play on busy weekends, so as to yield more income and thus reduce the net cost to the municipality. If this were the only purpose served, the plaintiffs might be entitled to relief. The record disclosed however that other considerations entered into the action taken and bear upon its validity. The board considered that "as a general rule women are slower on the golf course than men," although it recognized that there are individual exceptions. The evidence disclosed that "when it is crowded and the playing is slowed up, it contributes to more danger . . . You are holding back all the time and have a tendency to hit away when you shouldn't." The risk incident to faster groups playing through slower ones was recognized. In 1954 additional steps were taken by the board to alleviate the dangers of crowding. A starter was provided, in addition to rangers stationed on the course; and play by any group larger than a foursome was prohibited.

If the regulation is to be sustained, it must be because adopted in exercise of the State's protective power. It seems plain that the exclusion of women and children from the course for a limited period during the busiest hours is reasonably calculated to decrease the risk of injury arising from a crowded course. The problem before the board was not one of numbers alone, but more particularly of the movement of groups of people about the course in safety and enjoyment—or so it could be found. The separation of slow moving groups from fast ones might reasonably be expected to alleviate the situation. The conclusion of the board that women golfers, on the average, progress about the course more slowly than men was not plainly mistaken or arbitrary. It cannot be said that the regulation had no tendency to further

the safety of players, and of women and children golfers in particular.

The question remains whether the curtailment of the individual rights of the plaintiffs was so serious that all must agree that it outweighs the benefits sought to be conferred upon the general public. *Hood & Sons v. Boucher*, 98 N. H. 399. The regulation does not prohibit playing by women or children during the hours in question, provided they commence to play before 10:00 A. M. They are free to play at any time after 2:00 P. M. Thus it is still possible for them to play in both forenoon and afternoon, although not permitted to start out during the hours when the course must be assumed to be most crowded.

The regulation adopted by the defendant board was primarily designed to protect the playing public as a whole. Women were separately classified with children, not because of sex, but because of a manner of playing golf thought to be characteristic of them as a group. Upon the facts before us, we are not constrained to hold that the regulation in this case established an invalid classification or that the resulting curtailment of the plaintiffs' rights is so great and the possible benefit to the public so slight, that the regulation must be held arbitrary, unreasonable, and hence unlawful. *Hood & Sons v. Boucher, supra.* The transferred questions are answered in the negative.

*Bill dismissed.*

All concurred.