NEW HAMPSHIRE BANKERS ASSOCIATION et al.

v.

James W. NELSON, Bank Commissioner for the State of New Hampshire, and Warren B. Rudman, Attorney General for the State of New Hampshire.

Civ. A. No. 3355.

United States District Court, D. New Hampshire.

Jan. 19, 1972.

William S. Green, Sheehan, Phinney, Bass & Green, Manchester, N. H., for plaintiffs.

Donald W. Stever, Jr., Attorney, Office of the Attorney General for the State of New Hampshire, Concord, N. H., for defendants.

OPINION

BOWNES, District Judge.

This case, brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, is a three pronged attack on that provision of New Hampshire Revised Statutes Annotated, Chapter 390:13, which prohibits trust companies or similar corporations or national banks from advertising or circularizing the fact that they are authorized to act as executors.

The plaintiffs seek a decree adjudging that:

1. The prohibition is null and void as to the national bank plaintiffs on the grounds that federal law preempts the field.

2. The prohibition is null and void as to both national and state banks because it denies them due process of law and equal protection of the law guaranteed by the United States Constitution.

3. The prohibition is null and void as to both national and state banks because it contravenes Articles 1st and 2d of Part First of the New Hampshire Constitution.

All of the facts have been stipulated:

1. The State of New Hampshire is the only state in the United States which clearly prohibits banks from advertising their capacity to act as executors. The State of Washington has an ambiguous statute which some banks interpret to restrict their right to so advertise; however, many banks in Washington do advertise their capacity to serve as executors.

2. All plaintiff banks have an operating trust department which actively seeks trusteeships and executorships.

3. A survey by the firm of Kennedy Sinclaire, Inc., of Wayne, New Jersey, was made of some 700 probate courts in states which permit banks to advertise their capacity to act as executors. The results of this survey show that corporate fiduciaries served as executors in only 26% of the dollar value of all surveyed estates.

4. Another survey made by Kennedy Sinclaire, Inc. of Wayne, New Jersey, of the records of 42 probate courts during 1967 through 1969 in only those states which allow banks to advertise their capacity to act as executors showed the following results:

| | | |
|---|---|---|
| Number of Estates | 3,485 = | 100% |
| Individual Executorships | 2,238 = | 64% |
| Corporate Executorships | 1,009 = | 29% |
| Intestacies | 238 = | 7% |

5. A survey of the probate records in the City of Baltimore in 1961 through 1962 made by Kennedy Sinclaire, Inc. of Wayne, New Jersey, shows the following results:

City of Baltimore, Md.
1961 – 1962
*Estates $50,000 and Over*

| | | |
|---|---|---|
| Total Number Estates | 609 = | 100% |
| Individual Executors | 395 = | 65% |
| Corporate Executors | 165 = | 27% |
| Intestacies | 49 = | 8% |

6. In 1970, 3,500 banks in the United States possessed the power to act as

trustees and executors; of these only 28 banks in New Hampshire and less than 32 banks in Washington were not allowed to advertise their capacity to act as executors.

7. Foreign banks presently conduct advertising of their capacity to act as executors which reaches New Hampshire; advertisements are regularly carried by major banks in the *Boston Globe, Boston Herald, New York Times* and *Wall Street Journal*; in various national and regional magazines; and by radio and television.

8. Each plaintiff bank will incur loss of potential profit in excess of $10,000 (exclusive of interest and costs) if the prohibitions of RSA 390:13 are not removed.

9. James W. Nelson, Bank Commissioner for the State of New Hampshire, has, by letter dated May 5, 1971, threatened to initiate prosecution under RSA 390:13 of any plaintiff bank who engages in the activity described in paragraph 13 of the complaint in this action.

The statute under attack provides:

*Power to Act as Fiduciary.* Any trust company or similar corporation, incorporated under the laws of this state, or any national bank duly authorized and located within the state, may be appointed trustee or executor in any case where an individual can be appointed, upon the same conditions and subject to the same control, requirements, and penalties. *No such trust company or similar corporation or national bank shall advertise or circularize the fact that it is authorized to act as executor.*

Any trust company organized under the laws of New Hampshire may be authorized and empowered to act as receiver, assignee or agent for any person, firm, association or corporation, public or private; and in all proceedings in court or elsewhere in relation to such trusts or agencies, all accounts and other papers may be signed and sworn to in behalf of the corporation by any officer duly authorized.

Nothing herein contained shall affect the rights of religious, charitable, and eleemosynary corporations organized under the laws of New Hampshire to act in fiduciary capacities, or extend to corporations other than trust companies and similar corporations, or any national bank duly authorized and located within the state, power to act in a fiduciary capacity. N.H.Rev.Stat. Ann., Ch. 390:13. [Emphasis added.]

 I first consider the question of whether or not federal law preempts the field as far as the national banks are concerned and renders the advertising prohibition inoperative as to them. The pertinent federal statute is 12 U.S.C. § 92a:

*Trust powers—Authority of Comptroller of the Currency*

(a) The Comptroller of the Currency shall be authorized and empowered to grant by special permit to national banks applying therefor, *when not in contravention of State or local law,* the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act *under the laws of the State in which the national bank is located.* [Emphasis added.]

It is significant that this section of the Act uses the phrase "when not in contravention of State or local law." The Congress clearly intended that national banks should have the same rights as state banks "under the laws of the State in which the national bank is located."

One of the leading cases in this field is Franklin National Bank v. New York, 347 U.S. 373, 74 S.Ct. 550, 98 L.Ed. 767 (1954). That case, in the words of Mr. Justice Frankfurter, presented:

. . . the narrow question whether federal statutes which authorize national banks to receive savings deposits conflict with New York legislation

which prohibits them from using the word "saving" or "savings" in their advertising or business. At page 374, 74 S.Ct. at page 551.

The Court held:

We think the federal and state statutes are incompatible, and in such circumstances the policy of the State must yield. At page 374, 74 S.Ct. at. page 552.

The New York statute clearly discriminated against national banks in favor of state mutual savings banks. Mr. Justice Frankfurter, in the course of deciding the narrow question used some broad language that the plaintiffs have seized upon as the spearhead of their preemption attack:

Nor can we construe the two Federal Acts as permitting only a passive acceptance of deposits thrust upon them. Modern competition for business finds advertising one of the most usual and useful of weapons. We cannot believe that the incidental powers granted to national banks should be construed so narrowly as to preclude the use of advertising in any branch of their authorized business. It would require some affirmative indication to justify an interpretation that would permit a national bank to engage in a business but gave no right to let the public know about it. At pages 377–378, 74 S.Ct. at page 553.

This paragraph does suggest that there can be no prohibition of advertising as it affects a national bank. But it is dicta only and, in my opinion, does not overcome the plain words of 12 U.S.C. § 92a. The purpose of this type of federal banking statute can best be expressed in the words of Mr. Justice Frankfurter:

That these federal institutions may be at no disadvantage in competition with state-created institutions, the Federal Government has frequently expanded their functions and authority. Franklin National Bank v. New York, *supra,* at page 375, 74 S.Ct. at page 552.

The New Hampshire statute does not put the national banks at any competitive disadvantage with state banks. Both are treated equally. 12 U.S.C. § 92a allows national banks to offer the equivalent fiduciary services to their customers as do state banks. Investment Company Institute v. Camp, 274 F.Supp. 624, 640 (D.C.1967). If, as plaintiffs urge, advertising is necessary to make these services effective, then both sets of banks labor under the same handicap.

In First National Bank of Logan v. Walker Bank and Trust Co., 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966), Mr. Justice Clark delved deeply into the history and background of the National Banking Act. Although the case was concerned with branch banking, the opinion makes it clear that the Congress in enacting, supplementing, and amending the National Banking Act was ever seeking to keep national banks and state banks on the same basis of "competitive equality." The holding indicates that state statutes are not to be swept aside by federal law merely because they may inhibit banking activities, but must be complied with by national banks if they do not put them at a competitive disadvantage with state banks.

Indeed, it would fly in the face of the legislative history not to hold that national branch banking is limited to those States the laws of which permit it, and even there "only to the extent that the State laws permit branch banking." At page 261, 87 S.Ct. at page 497.

In First National Bank v. Dickinson, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969), Mr. Chief Justice Burger said:

Here we are confronted by a systematic attempt to secure for national banks branching privileges which Florida denies to competing state banks. The utility of the armored car service and deposit receptacle are obvious; many States permit state chartered banks to use this eminently sensible mode of operations, but Florida's policy is not open to judicial review any more than is the congressional

policy of "competitive equality." At page 138, 90 S.Ct. at page 345.

The preemption argument in this case is an attempt to secure for national banks advertising rights which New Hampshire denies to competing state banks. While the advertising ban may not be in the best interests of either national or state banks, it is not open to judicial review. There is no inherent right of banks to advertise and, since the New Hampshire statute is an evenhanded prohibition against advertising by all banks, it is not in conflict with the Federal Banking Act.

■ The next issue is the alleged unconstitutionality of the statute on the grounds that it denies all of the plaintiffs, both state and national banks, equal protection and due process under the Fifth and Fourteenth Amendments to the Federal Constitution, and also violates Articles 1st and 2d of Part First of the New Hampshire Constitution. The defendants controvert this claim, but also assert that the doctrine of abstention precludes a decision on the constitutional issues and, in the alternative, that any constitutional decision requires the convening of a three-judge court.

The defendants misconstrue the scope and application of the abstention doctrine which has its roots in Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S. Ct. 643, 85 L.Ed. 971 (1941). The underlying issue in that case was the meaning of Article 6445 of the Texas Civil Statutes. The question of whether federal constitutional issues would be brought into play at all depended on the interpretation given the Texas statute. Mr. Justice Frankfurter pointed out:

The last word on the meaning of Article 6445 of the Texas Civil Statutes, and therefore the last word on the statu-

tory authority of the Railroad Commission in this case, belongs neither to us nor to the district court but to the supreme court of Texas. In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication. At pages 499–500, 61 S.Ct. at page 645.

This case does not hinge on a preliminary interpretation of a state statute. The constitutional validity of the state statute is the only issue. The most recent Supreme Court case on abstention is Reetz v. Bozanich, 397 U.S. 82, 90 S. Ct. 788, 25 L.Ed.2d 68 (1970), which involved certain fishing laws of Alaska. The court held that, since the laws might be invalid because of a conflict with specific provisions of the Alaska Constitution having to do with fish and fishery rights, abstention should be invoked:

A state court decision here, however, could conceivably avoid any decision under the Fourteenth Amendment and would avoid any possible irritant in the federal-state relationship. At pages 86–87, 90 S.Ct. at page 790.

But here the provisions of the Federal State Constitution invoked have the same general scope and meaning.[1] Allen v. Manchester, 99 N.H. 388, 390, 111 A.2d 817 (1955); Welch Co. v. State, 89 N.H. 428, 431, 199 A. 886 (1938); State v. Pennoyer, 65 N.H. 113, 115, 18 A. 878 (1889). In the case at bar, there is no way that a Fourteenth Amendment issue can be avoided by recourse to the state courts. In Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), the Court held abstention improper:

But we have here no question of a construction of § 781–b [New York statute] that would "avoid or modify

---

1. New Hampshire Constitution, Part First, Article 1st:
All men are born equally free and independent: Therefore, all government, of right, originates from the people, is founded in consent, and instituted for the general good.

New Hampshire Constitution, Part First, Article 2d:
All men have certain natural, essential, and inherent rights—among which are, the enjoying and defending life and liberty; acquiring, possessing, and protecting, property; and, in a word, of seeking and obtaining happiness.

the constitutional question." At page 249, 88 S.Ct. at page 396.

In Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965), the Court stated the duty of the federal court in this type of situation:

> If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction. Baggett v. Bullitt, 377 U.S. 360, 375–379, 84 S. Ct. 1316, 12 L.Ed.2d 377. At pages 534–535, 85 S.Ct. at page 1182.

The cases cited by the defendant are inapposite. Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620 (1961), and Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), had to do with a federal injunction against state criminal proceedings. There are no state criminal proceedings pending under the state statute and no injunction is sought against any state court action. I rule that the doctrine of abstention does not apply.

■ The defendants also misconstrue the requirements for convening a three-judge court. No injunction is sought here until all rights have elapsed. The plaintiffs essentially seek declaratory relief under 28 U.S.C. § 2201. Merced Rosa v. Herrero, 423 F.2d 591, 593 (1st Cir. 1970); Fremed v. Johnson, 311 F.Supp. 1116 (D.Colo.1970); Roberge v. Philbrook, 313 F.Supp. 608 (D.Vt.1970). The congressional policy underlying the statutes requiring three-judge courts, 28 U. S.C. §§ 2281 and 2282, was delineated in Kennedy v. Mendoza-Martinez, 372 U. S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963):

> The legislative history of § 2282 and of its complement, § 2281, requiring three judges to hear injunctive suits directed against federal and state legislation, respectively, indicates that these sections were enacted to prevent a single federal judge from being able to paralyze totally the operation of an entire regulatory scheme, either state or federal, by issuance of a broad injunctive order. Section 2281 "was a means of protecting the increasing body of state legislation regulating economic enterprise from invalidation by a conventional suit in equity . . . . The crux of the business is procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy. . . ." At page 154, 83 S.Ct. at page 560.

The "doom" of any legislative policy involved here will not descend until the case has run its full appellate course.

■ Since the responsibility and duty of deciding the constitutional issue is imposed on the federal court, I now turn to that question. All banks, state and national, have always been subject to regulation and control by the legislature. The wisdom or desirability of a particular regulation is the concern of the legislature. Opinion of the Justices, 102 N.H. 106, 108, 151 A.2d 236 (1959). The New Hampshire legislative history as to this particular banking statute is sparse, but significant.

The first statute in this field was enacted in 1915. It authorized and empowered trust companies or similar corporations to act as trustees. N.H.Laws of 1915, Chapter 109:15. There was nothing in this law, or any other law then in effect, authorizing banks to act as executors. It can be concluded that until 1915, banks could not act either as trustees or executors. In 1919 the legislature authorized both state and national banks to be appointed trustee "[i]n any case where an individual can be appointed . . . ." The statute also contained this language: ". . . but no corporation shall be appointed in any other fiduciary capacity." N.H.Laws of 1919, Chapter 121:1. This, of course, clearly prohibited banks from acting as executors. The statute now challenged was enacted in 1927. N.H. Laws of 1927, Chapter 135:1. It allowed banks to act as executors as well as trustees and prohibited advertising or circularizing this fact. Except for minor

changes in wording, the law has remained the same to the present.[2]

There was one abortive challenge to the law. In 1955 the House of Representatives asked the Supreme Court for an advisory opinion as to the constitutionality of the advertising prohibition. The Court declined to render an opinion since the New Hampshire constitutional provision authorizing advisory opinions does not apply to existing laws.[3]

Plaintiffs urge that the prohibition against advertising discriminates against banks and in favor of lawyers by placing banks on the same footing as members of the bar who, because of the Canon of Ethics, cannot advertise. It is also suggested that, since laymen and charitable and religious institutions are not included within the prohibition but are allowed to be executors, they may advertise, and that this also constitutes discrimination against the banks. This suggestion is based on the language of the statute, not the realities of probate practice in New Hampshire. It is proper for me to take judicial notice of the fact that there is no advertising by anyone in the State of New Hampshire as to availability and suitability to act as executor.[4]

██ Even if it is conceded that the purpose and effect of the law is to prevent lawyers from losing executor appointments to banks because of bank advertising and that, as a result, lawyers do receive favored treatment, this does not make it constitutionally defective.[5] In Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963), Mr. Justice Black, speaking for a unanimous Court, had this to say about a Kansas statute that made it a misdemeanor for any person to engage in the business of debt adjusting except as an incident to the lawful practice of law:

Nor is the statute's exception of lawyers a denial of equal protection of the laws to nonlawyers. Statutes create many classifications which do not deny equal protection; it is only "invidious discrimination" which offends the Constitution. The business of debt adjusting gives rise to a relationship of trust in which the debt adjuster will, in a situation of insolvency, be marshalling assets in the manner of a proceeding in bankruptcy. The debt adjuster's client may need advice as to the legality of the various claims against him, remedies existing under state laws governing debtor-creditor relationships, or provisions of the Bankruptcy Act—advice which a nonlawyer cannot lawfully give him. At page 732, 83 S.Ct. at page 1032.

In the only state case that comes anywhere close to this particular issue, Pedrick v. First National Bank of Ripon, Wisconsin, 267 Wis. 436, 66 N.W.2d 154 (1954), a statute providing that when a corporation is named as executor, the nearest of kin receiving any interest, or the party receiving the largest amount from the estate, shall name the attorney to represent the estate was held not to be unreasonable and not to deny equal protection under the Fourteenth Amendment to the Constitution. In the course of its opinion, the court noted:

Individuals, who exist in great numbers, do not singly seek or control any substantial volume of executor or administratorships, whereas the comparatively few legally eligible corporations do solicit and obtain a large volume of this business. Unless otherwise re-

---

2. N.H.Laws of 1935, Chapter 81:1; N.H. Rev.Laws of 1942, Chapter 312:13.

3. Part Second, Article 74 of the Constitution of New Hampshire provides:
 Each branch of the legislature as well as the governor and council shall have authority to require the opinions of the justices of the supreme court upon important questions of law and upon solemn occasions.

4. Counsel for the plaintiffs admitted this in oral argument.

5. In this connection, the court notes that no figures are available in New Hampshire showing the number of individual executors and corporate executors. The figures stipulated to may amount to either a tribute to the power of advertising or a censure.

strained, this tends to create in such corporations a monopoly of the appointments of attorneys to handle such work. See In re Estate of Ogg, 1952, 262 Wis. 181, 54 N.W.2d 175. No such concentration of the power of appointing attorneys is present when wills nominate individual executors. On the contrary, the power is then dispersed. 66 N.W. 2d at 156.

It is interesting to note that when the passage of the New Hampshire law was being debated in 1927, it was opposed on the same grounds, i. e., that it would create a monopoly of the probate practice in New Hampshire.[6] The ban on advertising by banks certainly constitutes a formidable obstacle to the creation of such a monopoly.

■ The position of executor gives rise to a relationship of trust calling for personal advice. The New Hampshire Legislature may well have thought that the appointment of an executor should be the result of personal contact and a personal relationship rather than stem from advertising promotions and slogans. While advertising has become an accepted fact of our daily life, such acceptance does not mean that it is an inherent or inalienable part of every facet of banking activity. There are many valid reasons that can be advanced for choosing a bank rather than an individual to act as an executor of an estate. But the New Hampshire Legislature may well have decided that such selection should be made on a personal basis without the general populace being subject to the blandishments of advertising campaigns on behalf of specific banks and trust companies.

This is an even more fundamental reason for not voiding the statute. In Ferguson v. Skrupa, supra, the court emphatically held:

The doctrine that prevailed in Lochner [Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937], Coppage [Coppage v. Kansas, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441], Adkins,

Burns [Jay Burns Baking Co. v. Bryan, 264 U.S. 504, 44 S.Ct. 412, 68 L.Ed. 813], and like cases—that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded. We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws. 372 U.S. at page 730, 83 S.Ct. at page 1031.

Mr. Justice Black's majority opinion in Ferguson v. Skrupa, supra, was presaged by his dissent in Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957):

Unless state legislatures have power to make distinctions that are not plainly unreasonable, then the ability of the States to protect their citizens by regulating business within their boundaries can be seriously impaired. I feel it necessary to express once again my objection to the use of general provisions of the Constitution to restrict narrowly state power over state domestic economic affairs.

I think state regulation should be viewed quite differently where it touches or involves freedom of speech, press, religion, petition, assembly, or other specific safeguards of the Bill of Rights. At page 471, 77 S.Ct. at page 1353.

While advertising is a form of speech, it is clear that what we are dealing with in this case concerns the economic rights of the banks rather than First Amendment rights. Although the plaintiffs urge that the public's right to be informed is a factor to be considered, it must be recognized that the contest here is primarily between bankers and lawyers, and the general public is not going to be affected by the outcome one way or the other.

In Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955), the Court held an Oklahoma stat-

---

6. Excerpt from Concord Monitor, April 5, 1927, Ex. A, Plaintiff's Brief.

ute restricting the fitting and replacing of eye glasses to licensed optometrists and opthalmalogists impervious to constitutional attacks based on alleged due process and equal protection violations. Speaking for a unanimous Court, Mr. Justice Douglas said:

> The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought. At page 488, 75 S.Ct. at page 464.

Plaintiffs have argued in their brief that the equal protection rights inherent in the New Hampshire Constitution would be given a broader application by the state court than the equal protection rights under the United States Constitution. Some state courts have refused to go as far as the United States Supreme Court in upholding state economic regulations. See Day-Brite Lighting, Inc. v. Missouri, 342 U.S. 421, 72 S.Ct. 405, 96 L.Ed. 469 (1952), and Heimgaertner v. Benjamin Electric Manufacturing Co., 6 Ill.2d 152, 128 N.E.2d 691 (1955). But there is no indication that the New Hampshire court would apply a standard different from that of the United States Supreme Court where economic rights are involved. See Opinion of the Justices, 108 N.H. 103, 111; 229 A.2d 188 (1967).

■ This advertising ban does not amount to an invidious discrimination against banks and in favor of lawyers. Until 1927, banks could not act as execu-tors in New Hampshire. The law was then changed to essentially what it is today. It is significant that there has been no constitutional challenge to the advertising prohibition until now. It is even more significant that between 1915 and 1927, the banks went to the legislature, not the courts, to obtain the right to act first as trustees and then as executors. They recognized that the scope and extent of banking powers was primarily a matter for the legislature. The legislature can, if it wishes, remove this prohibition against advertising. The wisdom and utility of this particular section of the banking laws is for the New Hampshire Legislature to decide, not the courts. If, as the plaintiffs suggest, this law was foisted upon the public and banking community by lawyers for their own benefit, then it should be removed by the same body which imposed it. There is nothing in the recent history of the New Hampshire Legislature to suggest that lawyers as a group are looked on with special favor or given preferential treatment. Indeed, it has been suggested in some quarters that bills with the backing of the organized bar are doomed to defeat.[7]

■ The fact that New Hampshire is the only state in the nation with this type of advertising prohibition may be grounds for questioning its wisdom, but its uniqueness does not make it vulnerable to constitutional attack.[8]

■ It is a matter of common knowledge, and stipulated to by the parties, that banks in Massachusetts conduct widespread advertising in all media of their capacity and ability to act as execu-

---

7. Based on remarks made at several meetings of the New Hampshire Bar Association by lawyers who were also members of the legislature.

8. When New Hampshire was the only state in New England which did not authorize branch banking, the New Hampshire Supreme Court advised the legislature:

> Although all of the other New England states have laws authorizing branch banking in some form (see New England Business Review, Federal Reserve Bank of Boston, April, 1959) New Hampshire has never enacted such a law. If the Legislature is of the opinion that unit banking better serves the public interest of the citizens of New Hampshire and that any further expansion of multiple banking should be curtailed we are of the opinion that it can properly do so in the exercise of the police power even though the rights of those regulated would be restricted thereby. Opinion of the Justices, 102 N.H. 106, 108, 151 A.2d 236, 238 (1959).

tors. But this does not result in unfair competition with New Hampshire banks because foreign banks and trust companies do not have the power to act as fiduciaries in the State of New Hampshire. The advertising carried on by Massachusetts banks, insofar as it is heeded by New Hampshire residents, amounts, therefore, to free advertising for New Hampshire banks.

While a court should be particularly suspect of legislation that favors lawyers, even in a negative way, as this prohibition does, such legislation should not be struck down by the courts unless the discrimination is invidious, arbitrary, and clearly unfair. I cannot find that it patently offends in any of these ways.

I hold that the advertising prohibition contained in New Hampshire Revised Statutes Annotated, Chapter 390:13 does not deny to the defendants equal protection and due process guaranteed under the United States Constitution nor violate Part First, Articles 1st and 2d of the New Hampshire Constitution.

Judgment for the defendants. No costs.

So ordered.