**AMERICAN TRUST COMPANY, INC.,
et al., Plaintiffs,**

v.

**SOUTH CAROLINA STATE BOARD OF
BANK CONTROL et al., Defendants.**

Civ. No. 73-637.

United States District Court,
D. South Carolina,
Columbia Division.

Argued April 23, 1974.

Decided Sept. 3, 1974.

Lawrence F. Noble, John V. Austin, Metzger, Noble, Schwarz & Kempler, Washington, D.C., John J. Spratt, Spratt, McKeown & Spratt, York, S. C., for plaintiffs.

Daniel R. McLeod, Atty. Gen. of S. C., Bruce E. Davis, Asst. Atty. Gen.,

Columbia, S. C., Charles W. Knowlton, John H. Lumpkin, Jr., J. Donald Dial, Jr., Boyd, Knowlton, Tate & Finlay, Columbia, S. C., for defendants.

Before BUTZNER and FIELD, Circuit Judges, and MARTIN, District Judge.

BUTZNER, Circuit Judge:

The NCNB Corporation, a North Carolina bank holding company, and two of its wholly owned subsidiaries, North Carolina National Bank and American Trust Company, Inc., brought this action against the South Carolina State Board of Bank Control and various state officials for a declaration that South Carolina Code § 8–580, and portions of §§ 19–592 and 67–53(a)(3) and (4) (1972 Supp.) are unconstitutional and for an injunction restraining their enforce-

ment. Jurisdiction is alleged under 28 U.S.C. §§ 1331 and 1343(3) and is not contested. Submission of the issues to this three-judge court pursuant to 28 U.S.C. § 2281 is also unquestioned.

After deferring decision of a motion for summary judgment, the court tried the case on a full evidentiary record. We hold that the second paragraph of § 19–592, which prohibits a foreign controlled domestic corporation from serving as an executor and administrator in the state, violates the equal protection clause of the 14th amendment.[1] Similarly, we hold unconstitutional under the equal protection clause those portions of §§ 67–53(a)(3) and (4), which bar South Carolina domestic corporations from serving as testamentary trustees because they are controlled by corporations domiciled or licensed in states contiguous to South Carolina.[2] However,

[1] § 19–592. Foreign corporation or officer, etc., thereof, or person controlled by such corporation, not to act as representative. —No corporation created by another state of the United States or by any foreign state, kingdom or government, and no corporation created under the laws of the United States and not having a business in this State shall be eligible or entitled to qualify or serve in this State as executor or administrator of the estate of any person domiciled in this State at the time of his death, whether the decedent shall die testate or intestate. No officer, employee, or agent of such foreign corporation shall be eligible to serve as executor or administrator in this State, whether the officer, employee, or agent is a resident or a nonresident of this State, if such officer, employee, or agent is acting as executor or administrator on behalf of such corporation.

No corporation, partnership or organization controlled, directly or indirectly, by such a foreign corporation shall be eligible or entitled to serve as executor or administrator in this State.

The 1972 amendment added the second paragraph.

[2] § 67–53. Foreign corporation, etc., or nonresident as trustee.—(a) No corporation created by another state of the United States or by any foreign state, kingdom, or government, and no corporation created under the laws of the United States and not having a place of business in the State

of South Carolina shall be eligible or entitled to qualify, serve, or hold title to property in this State as testamentary trustee of an estate of any person domiciled in this State at the time of his death, whether the decedent shall die testate or intestate, except, however, such foreign corporations may act as testamentary trustee in this State if:

(1) It has a bona fide capital of at least two hundred fifty thousand dollars actually paid in;

(2) It is authorized to act as testamentary trustee in the state in which it is incorporated or if such foreign corporation be a national banking association in the state in which it has its principal place of business; and

(3) Any bank or other corporation organized under the laws of this State or a national banking association having its principal place of business in this State is permitted by law to act as testamentary trustee in the state in which such foreign corporation seeking to act in this State is organized or in which it has its principal place of business if it is a national banking association without further showing or qualification other than that it is authorized to act in such fiduciary capacity in this State and upon compliance with the laws of such other state, if any, concerning service of process on nonresident fiduciaries. . . . No officer, employee or agent of any such foreign corporation shall be eligible or entitled to serve as

we conclude that § 67–53(a)(4) does not violate the due process clause or the commerce clause by excluding North Carolina National from serving as a testamentary trustee of estates of South Carolina decedents. Finally, we hold constitutional § 8–580, which, with certain exceptions, requires the State Board's approval for conducting a trust business.[3]

NCNB Corporation is organized under the laws of North Carolina as a bank holding company within the meaning of the Bank Holding Company Act. 12 U.S.C. § 1841 et seq. (1970). It owns all of the stock, except the directors' qualifying shares of North Carolina National Bank, which is organized under the laws of the United States and maintains its principal offices in Charlotte, North Carolina. In addition to being one of the largest commercial banks in the southeastern part of the country, North Carolina National operates an extensive trust department. Its customers include a number of residents of South Carolina,

who, in conformity with South Carolina law in effect at the time, named North Carolina National as their testamentary trustee. However, in 1970, South Carolina excluded otherwise qualified corporations that are domiciled or licensed in North Carolina or Georgia from serving as testamentary trustees of estates of South Carolina decedents.[4]

NCNB Corporation then formed a South Carolina corporation, American Trust Company, to transact trust business in South Carolina. Before NCNB could launch its proposal to provide trust services in South Carolina through American Trust, it was required by federal law to obtain the approval of the Board of Governors of the Federal Reserve System.[5] Despite opposition from South Carolina banking interests, the Board of Governors concluded that it would be in the public interest for NCNB to engage in the trust business in South Carolina through its subsidiary, American Trust.[6] The Board, however, was unable to give its unqualified

testamentary trustee in this State whether such officer, employee, or agent is a resident or a nonresident of this State if such officer, employee, or agent is acting as testamentary trustee on behalf of such foreign corporation except when such foreign corporation itself shall be eligible to so serve.

No corporation, partnership or other organization controlled, directly or indirectly, by such a foreign corporation shall be eligible or entitled to serve as testamentary trustee in this State, except when such foreign corporation itself shall be eligible to so serve.

(4) Such foreign corporation is not domiciled or licensed to do business in a state contiguous to the State of South Carolina. The 1970 amendment added subdivision (4). The 1972 amendment added the second paragraph of subdivision (3).

3. § 8–580. Written approval from State Board of Bank Control required; exceptions.—No corporation, partnership or other person shall conduct a trust business in this State without first making a written application to the State Board of Bank Control and receiving written approval from the Board. Before any such application shall be approved, the Board shall make an investigation to determine

whether or not the applicant has complied with all the provisions of law, whether in the judgment of the Board the applicant is qualified to conduct such a business and whether the conduct of such a business would serve the public interest, taking into consideration local circumstances and conditions at the place where such applicant proposes to do business; provided, however, that any person actively engaged in conducting a trust business in this State on January 1, 1972, shall not be required to make the application and receive the approval provided for herein. Provided, further, that nothing contained in this section shall prevent a natural person or a national banking association having its principal place of business in this State from qualifying and acting as trustee, executor, administrator, guardian, committee or in any other fiduciary capacity. This section was enacted in 1972.

4. See n. 2, supra.

5. See 12 U.S.C. § 1843(c)(8) (1970); 12 C. F.R. § 225.4(a)(4), (5) and (b)(1) (1974).

6. The Board stated in part:

Further, the Board questions the characterization of the entry of additional competitors into South Carolina trust markets as undesirable. The record in this matter

approval because, while NCNB's application was pending American Trust was prohibited by newly enacted laws from serving as an executor, administrator, or testamentary trustee.[7] Accordingly, the Board approved NCNB's request to the extent permitted by South Carolina law. This litigation was then instituted to test the constitutionality of South Carolina's restrictive statutes.

At the outset it may be well to clarify the scope of the attack on South Carolina's statutes. The plaintiffs do not question the power of South Carolina to prohibit foreign corporations from serving as executors or administrators of the estates of South Carolina decedents. Nor do they challenge any South Carolina statutes governing the conduct of fiduciaries and prescribing their duties. The plaintiff's attack is directed against those portions of South Carolina statutes that (I) bar foreign controlled domestic corporations from serving as executors, administrators [§ 19–592] and testamentary trustees [§§ 67–53(a)(3) and (4)]; (II) exclude corporations domiciled or licensed in contiguous states, *i. e.*, North Carolina and Georgia, from serving as testamentary trustees [§ 67–53(a)(4)]; and (III) require approval of the State Board to engage in the trust business [§ 8–580].

## I

### Equal Protection Clause

American Trust principally relies on the equal protection clause in attacking

§§ 19–592 and 67–53(a)(3) and (4) which prohibit it, as a domestic corporation, from serving as executor, administrator, or testamentary trustee because it is controlled by a North Carolina corporation.[8] It charges that the classification of domestic corporations by the domicile of their corporate owners is irrelevant to any constitutionally permissible exercise of South Carolina's police powers. South Carolina asserts that the prohibition of foreign controlled domestic trust companies assures local control over fiduciaries and prevents destructive competition to native controlled corporations for the ultimate benefit of the public. The state emphasizes that South Carolina's estates and trusts should be administered by persons trained in South Carolina law, that trust companies should serve small as well as large accounts, and that it is to the advantage of South Carolina's economy to retain within the state both commercial and trust deposits. All of these objectives, the state contends, will be impaired by the operation of foreign controlled domestic trust companies.

We start by accepting three of the state's propositions: the classification of domestic trust companies according to the domicile of their corporate owners is not inherently suspect, and the state, therefore, need not justify the classification by proving a compelling

---

discloses sufficient evidence for the Board to conclude reasonably that corporate-held personal trust assets are highly concentrated in the hands of the three largest South Carolina banks. The entry of NCNB into South Carolina may serve to reduce this concentration by the introduction of an additional alternative source for personal trust services; this would constitute, in the Board's view, a substantial public benefit.

. . . . .

. . . The Board considers as wholly speculative allegations contained in the record that the proposal will lead to undue concentration of economic resources or will result in decreased or unfair competition.

Statement by Board of Governors of the Federal Reserve System Regarding Proposal by NCNB Corporation to Operate A Trust Company in South Carolina through American Trust Company at 3, 4 (March 9, 1973).

7. *See* nn. 1 and 2, *supra.*

8. American Trust and NCNB also contend that the statutes violate the due process and the commerce clauses. Since we find the statutes unconstitutional under the equal protection clause, it is unnecessary to discuss the alternative allegations of unconstitutionality. We do, however, touch on these subjects in different contexts in Parts II and III of this opinion.

state interest;[9] the trust business, like banking, is subject to pervasive state control;[10] and the statutes are presumptively constitutional.[11] The principles governing the application of the equal protection clause have been succinctly restated in Reed v. Reed, 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971):

> "In applying [the equal protection] clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. . . . The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' . . . "

■ No similar case dealing with the application of the equal protection clause to a trust company has been called to our attention, but we perceive no reason for exempting this type of business. Despite the broad authority states have over banking and related business, a state may not deny the equal protection of the laws to a corporation engaged in check cashing and sale of money orders. Morey v. Doud, 354 U.S. 457 (1957). Moreover, several courts have held that the classification of domestic corporations according to the residence or domicile of their controlling stockholders bears no relation to the legitimate objective of state control over companies engaged in various aspects of financing. Consequently, courts dealing with the problem have ruled that classification by domicile of the owners is a form of invidious discrimination that violates the equal protection clause. Mid-Penn National Mtge. Co. v. Hughes, 258 A.2d 291 (Del.Super.Ct.1969), aff'd per curiam, 268 A.2d 876 (Del.Sup.1970) (mortgage company); Oxford Consumer Discount Co. v. Stefanelli, 102 N.J.Super. 549, 246 A.2d 460 (1968), aff'd per curiam, 55 N.J. 489, 262 A.2d 874, appeal dismissed, 400 U.S. 808, 91 S.Ct. 45, 27 L.Ed.2d 38 (1970) (mortgage company); Miskell v. Termplan, Inc., 381 S.W.2d 129 (Tex. Civ.App.1964) (small loan company).[12]

■ Undoubtedly, South Carolina has a legitimate interest in assuring that corporate fiducaries serve the public faithfully. Laws prescribing the fiduciaries' financial resources, governing their conduct, and defining their responsibilities are appropriate means of controlling trust companies. The difficulty with the state's argument is that the challenged statutes do not bear a fair and substantial relation to the objectives that the state seeks. A domestic trust company, whether it be native or foreign owned, can be required to retain licensed South Carolina attorneys to conduct those aspects of its business which the state includes in the practice of law. But the challenged statutes do not contain this requirement. Similarly, noth-

---

9. *See generally* Note, Developments in the Law, Equal Protection, 82 Harv.L.Rev. 1065 (1969).

10. *See generally* 8 Michie, Banks and Banking, Ch. 17 (1971).

11. *See* Davies Warehouse Co. v. Bowles, 321 U.S. 144, 153, 64 S.Ct. 474, 88 L.Ed. 635 (1944).

12. Cases dealing with other types of exclusion are instructive. A state's excessive license fee that lacks a reasonable basis for being levied only against fishing boats owned by citizens of other states violates the privileges and immunities clause. Toomer v. Whitsel, 334 U.S. 385, 68 S.Ct. 1156, 92 L. Ed. 1460 (1948). Exclusion of aliens from a state's fisheries violates the equal protection clause. Takahashi v. Fish and Game Commission, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948). And closer to the mark, a statute excluding a domestic corporation from state fishing grounds because it is owned by nonresidents violates the equal protection clause. Edwards v. Leaver, 102 F.Supp. 698 (D.R.I.1952) (three-judge court).

ing in the challenged statutes would prevent a native owned domestic corporation from seeking investment or legal advice from persons who have offices in other states. A native owned domestic corporation is not barred from refusing small, uneconomic accounts, or from transferring funds out of the state if this is in the best interests of a trust's beneficiaries. The challenged statutes address none of these business practices. Contrary to the state's contention, the record fails to establish that a domestic trust company owned by a corporation domiciled or licensed in a state contiguous to South Carolina would be a less suitable testamentary trustee than a domestic company owned by a corporation domiciled in some other state. Nor does the proof demonstrate that a locally owned domestic trust company would better serve the public, or be more amenable to regulation, than a domestic company owned by a foreign corporation. Classification of domestic trust companies by the domicile or licensing of their corporate ownership bears no rational relation to the lawful discharge of their fiduciary duties or to the state's control over them.

■■■■ The state also argues that the statute serves the public interest by preventing competition that would injure South Carolina's existing corporate fiduciaries. While the equal protection clause denies a state the power to arbitrarily favor one domestic corporation over a competitor, the state can curb competition when the public interest will be served. *Compare* Mayflower Farms Products Co. v. Ten Eyck, 297 U.S. 266, 56 S.Ct. 457, 80 L.Ed. 675 (1936) *with* Borden's Farms Products Co. v. Ten Eyck, 297 U.S. 251, 56 S.Ct. 453, 80 L.Ed. 669 (1936). Accordingly, we accept the legal premise on which the state bottoms its argument: a state may limit competition in the trust business if the public interest will be served. Philadelphia Savings Fund Soc'y v. Myers, 406 Pa. 438, 179 A.2d 209 (1962). *Cf.* Noble State Bank v. Haskell, 219 U.S. 104, 31 S.Ct. 186, 55 L.Ed. 112 (1911).

But we reject the factual basis of the state's claim that foreign corporate control of domestic trust companies inherently creates competition that is detrimental to the public interest. The claim is based on speculative opinions that are directly in conflict with the conclusions reached by the Board of Governors of the Federal Reserve System. Moreover, we find no rational relationship between the state's classification of domestic trust companies and the protection of the public from competition. If the public welfare will suffer from injurious competition, nothing in the challenged statutes prevents such competition from native owned domestic trust companies.

We conclude, therefore, that the following statutes invidiously discriminate against South Carolina trust companies and deny them the equal protection of the laws:

The second paragraph of § 19–592, which bars a South Carolina trust company from serving as executor or administrator because it is controlled by a corporation domiciled in another state;

Those portions of § 67–53(a)(3) and (4), which bar a South Carolina trust company from serving as testamentary trustee because it is controlled by a corporation domiciled or licensed in a contiguous state.

■■■■ We, therefore, will grant an appropriate injunction restraining the enforcement of these laws against American Trust. In conformity with South Carolina law, we rule that the statutes are separable and therefore the remaining portions are not invalid. Parker v. Bates, 216 S.C. 52, 56 S.E.2d 723, 730 (1949).

## II

North Carolina National, claiming that it is otherwise qualified as a foreign corporation to serve as a testamentary trustee for South Carolina decedents, charges that the exclusion of corporations domiciled or licensed in states contiguous to South Carolina causes § 67–53(a)(4) to violate both the due

process and commerce clauses of the Constitution.[13] These contentions require only brief comment.

### Due Process Clause

It is undisputed that the Bank is a foreign corporation. Therefore, without violating the fourteenth amendment, South Carolina can exclude it from doing business in the state. Asbury Hospital v. Cass County, 326 U.S. 207, 211, 66 S.Ct. 61, 90 L.Ed. 6 (1945). Moreover, the Constitution commits to the states the power to control the administration of their citizens' estates. Labine v. Vincent, 401 U.S. 532, 538, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971); Riley v. New York Trust Co., 315 U.S. 343, 355, 62 S.Ct. 608, 86 L.Ed. 885 (1942); see 1 Bogert, Trusts and Trustees 642 (1965). Because the due process clause no longer offers a substantive bar to state regulation of a business subject to state control, North Dakota Pharmacy Board v. Snyder's Drug Stores, Inc., 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973), we conclude that § 67–53(a)(4) does not deprive North Carolina National of due process of law.

### Commerce Clause

North Carolina National places a value in excess of $32,000,000 on the estates of South Carolina residents who have requested it to act as testamentary trustee or as trustee of pour-over trusts into which the customers may eventually devise their estates. The Bank explained that it formerly transacted this business "through use of the mails, telephone, and personal visits between its trust officers and South Carolina residents establishing the trusts, the beneficiaries of such trusts, or their attorneys." We hold, for the purpose of this case, that the Bank's interstate activities as testamentary trustee for South Carolina decedents constituted interstate commerce. *Cf.* United States v. Philadelphia National Bank, 374 U.S. 321, 336 n.12, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963). This aspect of the case, therefore, turns on the question whether the ban against the Bank is an impermissible burden on interstate commerce.

National banks can exercise only the authority that has been expressly or impliedly granted to them by Congress. Investment Company Institute v. Camp, 401 U.S. 617, 628, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971). Federal law, 12 U.S.C. § 92a(a) and (b), authorizes a national bank to act as a fiduciary only "when not in contravention of State or local law." But a national bank does not act in contravention of state or local law if a competing state bank can serve as a fiduciary.[14] In this event, the national bank's authority is coextensive with the state bank's, but it is not enlarged. New Hampshire Bankers' Ass'n v. Nelson, 336 F.Supp. 1330 (D.N.H.), aff'd 460 F.2d 307 (1st Cir.1972). The term, "local law," as used in § 92a is defined as "the law of the state . . . governing the fiduciary relationship," 12

---

13. As a foreign corporation that is not "within [South Carolina's] jurisdiction," as specified by the 14th amendment, North Carolina National does not rely on the equal protection clause.

14. Title 12 U.S.C. §§ 92a(a) and (b) (1970) provide:

(a) The Comptroller of the Currency shall be authorized and empowered to grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.

(b) Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of State or local law within the meaning of this section.

C.F.R. § 9.1(f) (1974), which in this instance is the law of South Carolina. *See* 1 Bogert, Trusts and Trustees 642 (1965). Section 67–53(a)(4) prohibits both North Carolina state banks and national banks located in North Carolina from serving as testamentary trustees of South Carolina decedents. In this respect it treats both types of banks equally.

■ Congress has paramount authority over national banks. McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). It can exercise its authority by incorporating restrictions found in state law. In 1927, when the McFadden Act, 12 U.S.C. § 36 (1970), authorized national banks to operate branches to the same extent that a state bank located in the same state could operate them, it intended to create "competitive equality" between state and national banks located in the same state. First Nat'l Bank v. Walker Bank and Trust Co., 385 U.S. 252, 261, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966). It is apparent that in enacting § 92a, Congress intended to create the same kind of "competitive equality" with regard to trust services. Since South Carolina's ban on foreign testamentary trustees operates equally against state and national banks located in North Carolina, the exclusion of North Carolina National is not an impermissible burden on interstate commerce; Congress has allowed it by enacting § 92a. Furthermore, because the commerce clause is a grant, not a restriction, on the power of Congress "to regulate Commerce . . . among the several States . . ."[15] the exclusion is constitutionally valid. *Cf.* Prudential Insurance Co. v. Benjamin, 328 U.S. 408, 423, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946).[16]

### III

■ South Carolina Code § 8–580 (1972 Supp.)[17] requires, with certain exceptions, every corporation engaged in the trust business before January 1, 1972, to receive approval of the State Board of Bank Control before commencing operations. American Trust particularly objects to the Board's authority to determine "whether the conduct of such a business would serve the public interest, taking into consideration local circumstances and conditions at the place where such applicant proposes to do business." Recalling the opposition to NCNB's Federal Reserve application, American Trust contends that the clause will serve as a device to exclude it at the behest of its competitors.

The statute, however, is not unique. For example, it resembles, in many respects, federal law and regulations that pertain to applications from national banks seeking permission to exercise fiduciary powers.[18] For reasons that we mentioned in Part II, it does not violate the due process clause. The statute's

---

15. U.S. Const. art. 1, § 8.

16. The Comptroller of the Currency, who is charged by 12 U.S.C. § 92a(a) (1970) with determining whether a national bank may act as a fiduciary, has inferentially indicated that a national bank cannot exercise this power in a foreign jurisdiction which excludes nonresident fiduciaries. The Comptroller's opinion is as follows:

Exercise of Fiduciary Powers in Jurisdiction Other than the One in Which the Principal Office of the Bank is Located
This Office is of the opinion that a national bank authorized to exercise fiduciary powers may, without additional authority from this Office, exercise such power in other jurisdictions, the laws of which do not exclude nonresident fiduciaries. Accordingly, a national bank with fiduciary powers may exercise them in another State or country if the bank conforms to the laws of that jurisdiction.
Comptroller's Trust Examiners' Manual, Opinion Section, G–1 (1969). *See also* Current Legal and Regulatory Developments, 1 National Banking Review 599, 610 (1964).

17. *See* n. 3, *supra.*

18. *See* 12 U.S.C. § 92a(i) (1970); 12 C.F.R. § 9.3 (1974).

grandfather clause and exemptions have not been proved to be unreasonable classifications. Braeburn Securities Corporation v. Smith, 15 Ill.2d 55, 153 N.E.2d 806, 810 (1958). Therefore the statute, on its face, does not violate the equal protection clause.

NCNB contends that the statute unlawfully suppresses commercial intercourse between it and American Trust in contravention of the commerce and supremacy clauses.

We find no merit in NCNB's contentions. Section 7 of the Bank Holding Company Act, 12 U.S.C. § 1846 (1970) provides:

"The enactment by the Congress of this chapter shall not be construed as preventing any State from exercising such powers and jurisdiction which it now has or may hereafter have with respect to banks, bank holding companies, and subsidiaries thereof."

While this statute does not enlarge a state's powers over trust companies owned by bank holding companies, neither does it diminish them. Accordingly, for the reasons stated in Part II, we conclude that the statute does not unconstitutionally burden NCNB's interstate commercial activities.

We, therefore, hold that § 8–580 is valid on its face.

American Trust correctly contends that a valid statute may be applied in violation of the equal protection clause. *See, e. g.,* Yick Wo v. Hopkins, 118 U.S. 356, 373, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). But its attack on this ground is premature because it has not yet sought approval from the State Board of Bank Control. Accordingly, we deny the request for an injunction against § 8–580.

The evidence fails to establish that the Governor or the Attorney General have in any way infringed the plaintiffs' rights. Accordingly, they will be dismissed as parties defendant.