420 F.Supp. 510 (1976)
ST. LOUIS COUNTY NATIONAL BANK, Plaintiff,
Clayton Trust Company, and William R. Kostman, Director of the Division of Finance for the State of Missouri, Intervenor-Plaintiffs,
v.
MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION, and James E. Smith, Comptroller of the Currency of the United States, Defendants.
No. 74-226C(2).
United States District Court, E. D. Missouri, E. D.
June 18, 1976.
*511 Lashly, Caruthers, Thies, Rava & Hamel, Clayton, Mo., for plaintiff.
William G. Cole, Asst. Atty. Gen. for State of Mo., St. Louis, Mo., for Wm. R. Kostman.
Keefe, Schlafly, Griesedieck & Ferrell, St. Louis, Mo., for Clayton Trust Co.
William G. Guerri, John B. Crosby, Thompson & Mitchell, St. Louis, Mo., for Mercantile Trust Co. Nat. Ass'n.
*512 Donald J. Stohr, U. S. Atty., David W. Harland, Asst. U. S. Atty., St. Louis, Mo., Carla A. Hills, Asst. Atty. Gen., New York City, Harland F. Leathers, Susan P. Engelman, Attys., Dept. of Justice, Washington, D. C., for James E. Smith.

MEMORANDUM
REGAN, District Judge.
In this action tried to the Court, the facts have been stipulated and the matter has been submitted on the pleadings and exhibits thereto, the interrogatories of plaintiff to defendants and the answers to said interrogatories and the stipulation of facts with the exhibits attached thereto. The Court having fully considered all said matters and the briefs of the parties and being fully advised in the premises, makes and files the following findings of fact and conclusions of law thereon:

Findings of Fact
1. Plaintiff, St. Louis County National Bank, hereinafter called "County Bank," is a national banking association and has its place of business at 8000 Forsyth Boulevard in the City of Clayton, Missouri. It has no other office or place of business. County Bank is engaged in the banking business and was granted fiduciary powers by the Board of Governors of the Federal Reserve System on August 31, 1946. Pursuant to said grant of authority, County Bank has established a trust department which performs trust and fiduciary services at its place of business at Clayton, Missouri.
2. Defendant Mercantile Trust Company National Association, hereinafter called "Mercantile," is a national banking association and has its principal place of business at 721 Locust Street in the City of St. Louis, Missouri. Mercantile is engaged in the banking business and was granted fiduciary powers by the Comptroller of the Currency of the United States on December 24, 1964. Pursuant to said grant of authority, Mercantile has established a trust department at 721 Locust Street in the City of St. Louis, Missouri, which performs trust and fiduciary services.
3. Intervenor-Plaintiff, Clayton Trust Company, hereinafter called "Clayton Trust," is a Missouri corporation incorporated on November 6, 1972 under the laws of Missouri relating to trust companies. It is located and conducts a trust business at its place of business at 222 South Central in the City of Clayton, Missouri. Clayton Trust opened for business with the public on November 1, 1973, and has continued to conduct its trust business at said location since that date. It has no other office or place of business. Clayton Trust is authorized to conduct only a trust business and under its Articles of Incorporation is prohibited from conducting a banking business.
4. Intervenor-Plaintiff, William R. Kostman, hereinafter called "Kostman," is the Director of the Division of Finance for the State of Missouri. Kostman is charged with the responsibility for the execution of the laws of the State of Missouri relating to state banks, state trust companies and the state banking business. Kostman is the successor in office to C. W. Culley who was Commissioner of Finance, Department of Business and Administration, State of Missouri, in February, 1970.
5. Defendant, James E. Smith, hereinafter called "Comptroller," is the chief administrator of the office of the Comptroller of the Currency of the United States, an agency of the United States Treasury Department. Comptroller as administrator of National Banks is charged with the responsibility of the execution and regulation of the National Bank Act, 12 U.S.C. §§ 1 et seq., and all other laws relating to National Banks. Comptroller is authorized and empowered to grant fiduciary powers to all National Banks and to issue regulations governing the exercise of such powers, all as set forth specifically in the Federal Reserve Act, 12 U.S.C. § 92a, and the Code of Federal Regulations Title 12, Part 9. Comptroller is the successor in office to William B. Camp who was the Comptroller of the Currency of the United States in February, 1970.
6. County Bank, Mercantile, and Clayton Trust, in the exercise of their respective *513 fiduciary powers granted by the Board of Governors of the Federal Reserve System and the Director of the Division of Finance for the State of Missouri offer to the public a full range of trust and fiduciary services including probate administration for deceased, incompetent or minor persons; personal trust administration created by inter vivos or testamentary instruments or life insurance agreements; administration of pension, profit-sharing or other employee benefit plans; and management of custodian and agency accounts.
7. On May 21, 1969, Mercantile informed the then Comptroller of the Currency by letter that it was making plans to open a trust service office in Clayton, Missouri, located approximately 11 miles from its main banking office in the City of St. Louis. The Comptroller replied to Mercantile on June 12, 1969, stating that he had no objection to the proposed office in Clayton so long as Mercantile did not accept deposits, make loans or pay checks at the location, and that so long as the proposed office was not a branch office no certificate was needed for its operation.
8. On February 2, 1970, Mercantile opened its trust office in Clayton, Missouri. This office is approximately 3 blocks northwest of the trust office of Clayton Trust and 3 blocks east of the principal place of business of County Bank. No commercial banking services are performed by Mercantile at its trust office in Clayton, no checks are paid, no money lent, and no deposits are received. Mercantile's trust office in Clayton is not a separate legal entity but is an office subordinately operated by Mercantile from its main banking house in St. Louis and is a part of its central organization.
9. Mercantile uses its office in Clayton as a place to provide constant business contact with the public and to acquire new customers. At this office, Mercantile through its Trust Department employees, regularly carries on the following activities:
(a) Consults with customers and prospective customers and their attorneys, accountants and life underwriters concerning the trust services which Mercantile renders;
(b) Discusses the accounts of principals and beneficiaries of existing trusts and agencies;
(c) Reviews various proposed instruments which contemplate use of Mercantile's trust services, and discusses same with customers, prospective customers or their representatives;
(d) Provides convenient space for persons desiring to execute Wills, and sometimes acting as witnesses to Wills, which name Mercantile in a fiduciary capacity;
(e) Provides convenient space for persons desiring to execute Insurance Trusts, Living Trusts, Managing Agency Accounts and Custodian Accounts, which name Mercantile in a fiduciary capacity;
(f) Reviews existing Wills on file for present customers which wills are filed at Mercantile's principal place of business at 721 Locust Street, St. Louis, Missouri; and
(g) Researches estate and trust problems and discusses same with customers and their representatives.
10. On occasions, Mercantile receives estate and trust assets at the Clayton office. Customers and prospective customers use that office to sign documents and to deliver papers, documents and property to Mercantile and to receive papers, documents and property from Mercantile. On occasions, trust officers assigned to the Clayton office sign trust documents at that office in the name of and on behalf of Mercantile as a party to the trust instruments.
11. Although Mercantile receives estate and trust assets from the public at its Clayton office, it does not retain such assets at the Clayton premises but transfers them promptly to its main office in the City of St. Louis. No permanent records are maintained at its Clayton trust office; trust investment decisions, purchase and sale of securities, accounting services and safekeeping of assets for trust accounts are performed at Mercantile's Trust Department *514 at its location at 721 Locust Street, St. Louis, Missouri.
12. All personnel of the Clayton office are full-time employees of the Trust Department of Mercantile. Their duties are to obtain new customers for the Trust Department and they perform substantially the same duties which similarly qualified employees perform in the Trust Department at Mercantile's main banking house in St. Louis. No commercial banking personnel are connected with or are employed at the trust office.
13. The value to Mercantile of being able to continue to maintain its trust office in Clayton and to continue to conduct at that office the activities it now conducts there exceeds the sum of Ten Thousand Dollars ($10,000.00) exclusive of interest and costs.
14. The activities of Mercantile at the Clayton office with its present and prospective customers are in competition with the business activities of plaintiff, County Bank, and intervenor-plaintiff, Clayton Trust, which are located in Clayton, Missouri.
15. The operation by Mercantile at its trust office in Clayton constitutes a serious obstacle to plaintiffs, County Bank and Clayton Trust, in their respective efforts to obtain new customers for their trust business from the Clayton area and from adjacent areas. New trust business acquired by Mercantile through the activities of its personnel located at its trust office in Clayton deprives each of said plaintiffs of the opportunity to obtain such trust business for itself.
16. The maintenance by Mercantile of its branch trust office for the purposes and activities carried on by it at such office, gives to Mercantile or any other national bank engaging in similar activities a substantial competitive advantage over state banks and state trust companies in the conduct of banking and trust business.
17. Neither County Bank nor Clayton Trust can measure accurately the amount of its monetary damages, or its future damages, caused by the continuing existence of the Clayton trust office of Mercantile, and neither has any adequate remedy at law to prevent the damage resulting from such competition.
18. The matter in controversy exceeds the value of Ten Thousand Dollars ($10,000.00), exclusive of interest and costs.

Conclusions of Law
1. This Court has jurisdiction of the parties and of the subject matter of this action.
2. There is an existing controversy among the parties with respect to their rights, status and other legal relations as affected by federal and state statutes, which is appropriate for determination by a declaratory judgment of this Court.
3. The conditions upon which a national bank may establish and operate a branch are set forth in 12 U.S.C., § 36. To the extent here relevant the statute provides that with the approval of the Comptroller of the Currency, a national bank may establish and operate a branch only if state banks are affirmatively authorized by statutes of the state in question to establish and operate branches "and subject to the restrictions as to location imposed by the law of the State on State banks." The words "State banks" as used in this statute includes trust companies.
4. Section 362.105, R.S.Mo., expressly prohibits a bank or trust company from maintaining a branch bank or trust company or receiving deposits or cashing checks except in its own banking house or as provided in Section 362.107, R.S.Mo.
5. There is no statute in Missouri which affirmatively authorizes a state bank or trust company to establish and operate branches other than certain drive-in and walk-up facilities which may be established under the conditions prescribed in Section 362.107, R.S.Mo. The latter statute specifically provides that nothing therein shall be deemed to authorize the maintenance or operation of a branch bank or a branch trust company in contravention of the prohibition contained in Section 362.105, *515 R.S.Mo. Admittedly, Mercantile's trust office is not a facility within the meaning of Section 362.107.
6. 12 U.S.C., § 92a, empowers the Comptroller to authorize a national bank, "when not in contravention of State or local law," to act as trustee and "in any other fiduciary capacity in which State banks, trust companies or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located."
7. The purpose and intent of § 36 was to place national and state banks on a basis of competitive equality insofar as branching is concerned. First National Bank v. Walker Bank & Trust Co., 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966). However, the content of the "branch" is to be determined by federal law and not by state law definition of the term. First National Bank in Plant City v. Dickinson, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969).
8. The purpose and intent of § 92a is to place national banks which have been granted fiduciary powers on a basis of competitive equality with state banks and trust companies which are permitted by state law to exercise such powers.
9. Section 36(f) contains the only federal statutory definition of the term "branch." That section provides:
"The term `branch' as used in this section shall be held to include any branch bank, branch office, branch agency, additional office, or any branch place of business located in any State or Territory of the United States or in the District of Columbia at which deposits are received, or checks paid, or money lent."
10. The mere fact that deposits are not received or that checks are not paid or that money is not lent at Mercantile's trust office does not of itself preclude a finding that said trust office is a "branch." Obviously, the trust office is not a branch bank for the conduct of Mercantile's commercial banking activities. By expressly providing in the definition of the term "branch" that said term shall be held to include any branch office at which deposits are received, checks are paid, or money lent, Congress clearly negated an intent to limit the meaning of the term to a place at which at least one of the three named banking functions is performed. First National Bank v. Dickinson, supra, involved only the issue of whether, within the "include" portion of the definition, a bank has "received" a deposit at the time a customer delivers the money to a mobile armored car or to a secured stationary deposit receptacle. Even so, the Supreme Court noted, 396 U.S., l.c. 135, 90 S.Ct. 337, that at the very least, the term "branch bank" includes any place for receiving deposits, but that "it may include more." Dickinson cautioned that the definition in § 36(f) "must not be given a restrictive meaning which would frustrate the congressional intent," citing in footnote 8 the statement of Representative McFadden in which he described the definitional section of the Act as providing that:
"Any place outside of or away from the main office where the bank carries on its business of receiving deposits, paying checks, lending money, or transacting any business carried on at the main office, is a branch."
Under the construction contended for by Mercantile and by the Comptroller, nothing would prevent Mercantile or any other national bank, from establishing as many trust offices as it chooses, with no limitation upon the scope of the trust activities carried on at the branches, so long as no deposits are received, checks paid or money lent, these being activities which are not normally performed by trust companies. We do not believe such was the intent of Congress.
11. The special permit which was granted to Mercantile under § 92a to act in a fiduciary capacity authorizes it to so act only when not in contravention of Missouri law. In drafting § 92a, Congress limited the words "in contravention of State or local law" only to the extent that they should not be construed to permit the enactment of any state or local law which would be applicable solely to national banks *516 and thereby adversely affect the federal policy of competitive equality. Section 92a(b). In all other respects Congress intended to allow the state law to govern. In light of the congressional intent clearly expressed in Section 92a to maintain competitive equality between state and national banks, we do not believe that the grant of fiduciary powers encompasses the right to exercise those powers at a branch office when to do so would be in contravention of state law as applied to state banks and trust companies. To give such a meaning to the statute would frustrate the congressional intent.
We agree with the following statement in American Trust Co. Inc. v. South Carolina State Board of Bank Control, 381 F.Supp. 313, 323 (D.C.S.C.1974):
"Congress has paramount authority over national banks. . . . It can exercise its authority by incorporating restrictions found in state law. In 1927, when the McFadden Act, 12 U.S.C. § 36 (1970), authorized national banks to operate branches to the same extent that a state bank located in the same state could operate them, it intended to create `competitive equality' between state and national banks located in the same state. First Nat'l Bank v. Walker Bank and Trust Co., 385 U.S. 252, 261, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966). It is apparent that in enacting § 92a, Congress intended to create the same kind of `competitive equality' with regard to trust services."
12. In St. Louis Union Trust Co. v. Pemberton, 494 S.W.2d 408 (Mo.App.1973), it was held that a branch trust office at which a constant business contact with the public is maintained and which is established for the purpose of getting and maintaining trust business is within the Missouri prohibition of "branching."
13. Mercantile's trust office is a branch under federal law within the purview of § 36(f). The establishment of such a trust office is also in contravention of state law as construed in St. Louis Union Trust Co. v. Pemberton, supra, and therefore is not authorized by § 92a or by the special permit issued to Mercantile.
14. Defendants have wholly failed to prove that either plaintiff or intervenor-plaintiffs are guilty of laches. There is no evidence of unreasonable delay in seeking relief or of prejudice to defendants.
15. Plaintiff and intervenor-plaintiffs are entitled to a declaratory judgment that Mercantile's Clayton trust office is illegal and in contravention of Missouri law and federal statutes and to a judgment enjoining Mercantile from the continued use of said trust office.