INDEPENDENT BANKERS ASSOCIA-
TION OF AMERICA, et al.,
Plaintiffs,

v.

James E. SMITH, Comptroller of the
Currency of the United States,
Defendant.

Civ. A. No. 75–0089.

United States District Court,
District of Columbia.

July 31, 1975.

Meyer Eisenberg, Leonard J. Rubin,
Washington, D. C., for plaintiffs.

C. Westbrook Murphy, Deputy Chief
Counsel, Dept. of Treasury, Washington,

D. C., Charles I. Wikelius, Sp. Asst. Atty. Gen., Banking Div., St. Paul, Minn., David C. Shonka, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

By this action Plaintiffs seek judicial review of an interpretative ruling of the Comptroller of the Currency of the United States which held that a customer-bank communication terminal (CBCT), if established offpremises, is not a "branch" within the meaning of 12 U.S.C. § 36(f) (hereinafter the McFadden Act [1]). Generally speaking, a CBCT is a mechanism utilizing a computer which provides certain limited banking services at a location away from the bank. Such facilities can be located almost anywhere and used by any person with a bank account and a plastic "key card" issued to operate the CBCT. Plaintiffs consist of the Independent Bankers Association of America (IBAA), Robert A. Mampel, Commissioner of Banks for the State of Minnesota, nine state-chartered banks, and an individual, Thomas C. Brickle, who alleged himself to be a customer of a national bank. Basically, Plaintiffs contend that the interpretive ruling unlawfully interpreted the McFadden Act and was issued in violation of the provisions of the Administrative Procedure Act requiring notice and an opportunity for public comment.[2] The case is currently before the Court on Plaintiffs' Motion for Summary Judgment and Defendant's Motion to Dismiss or for Summary Judgment. Having reviewed the extensive pleadings filed in this action and heard oral argument on the matter, the Court concludes that Defendant is entitled to dismissal of several plaintiffs for lack of standing, but that the remaining plaintiffs are entitled to Summary Judgment on the merits of the case.

The Defendant's threshold argument is that the Court lacks jurisdiction over the subject matter of this action because each of the plaintiffs lack requisite standing and the case fails to present a justiciable case or controversy. On the standing question, the Court agrees with defendant that several plaintiff state chartered banks which have not yet been threatened by a CBCT and Plaintiff Brickle who shows only an interest in the ruling must be dismissed from this action for lack of standing. But Plaintiff IBAA, Commissioner Mampel, and the three state chartered banks which are within 50 miles of a proposed CBCT all establish the requirements to confer standing under relevant case law.[3] Further, the Court is of the opinion that although the Comptroller labelled his ruling "interpretive" and has indicated his intention to monitor the development of CBCT's, the ruling represents the definitive position of the Comptroller on this issue and the challenge presented herein "raises a clearcut legal issue susceptible of judicial solution."[4] Therefore, the Defendant's Motion to Dismiss on the grounds that the case fails to present a justiciable case or controversy must be denied.

The basic issue presented by this case is whether the Comptroller's ruling which declares that CBCT's are not "branches" under the McFadden Act can be upheld in light of the wording of the

---

1. 39 F.R. 44416 (December 24, 1974) as amended 40 F.R. 21701 (May 19, 1975).

2. 5 U.S.C. § 553.

3. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ; *Sierra Club v. Morton*, 405 U.S. 727, 91 S.Ct. 1361, 31 L.Ed. 636 (1972) ; *Investment Company Institute v. Camp*, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971) ; *ADAPSO v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) ; *National Motor Freight Traffic Association v. U. S.*, 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963) ; *Iowa Independent Bankers v. Board of Governors of the Federal Reserve System*, 511 F.2d 1288 (D.C. Cir. 1975) ; *Nuesse v. Camp*, 128 U.S.App. D.C. 172, 385 F.2d 694 (1967).

4. *Toilet Goods Ass'n Inc. v. Gardner*, 360 F. 2d 677, at 684 (2nd Cir. 1966) ; *National Motor Freight Traffic Ass'n v. United States*, 268 F.Supp. 90 (D.D.C.1967), aff'd, 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968).

statute and significant case law interpreting the Act. Simply put, relevant portions of the McFadden Act, which are set forth in the margin,[5] restrict national banks to establishing branches in individual states only to the extent that state banks are so permitted. By ruling that CBCT's are not "branches" under the McFadden Act, the Comptroller permits national banks to establish these facilities in all their forms across the country, regardless of state laws which prohibit branch banking.

The issue of whether the Comptroller's conclusion that CBCT's are not branches under the McFadden Act is resolved by determining first whether a CBCT is a "branch bank, branch office, branch agency, additional office, or any branch place of business" and, if answered affirmatively, determining secondly whether the facility receives deposits, pay checks or makes loans. The Comptroller determined that a CBCT is not a branch within the McFadden Act because it lacked the physical characteristics of a "branch bank, branch office, branch agency, additional office, or any branch place of business." The Comptroller also ruled that CBCT's did not perform the functions of receiving deposits, paying checks or making loans.

Plaintiffs argue that the Comptroller's ruling on both issues described above is unlawful on the grounds that it violates the clear wording of the statute, its legislative history and significant case law. Based on the cases of *First National Bank in Plant City v. Dickinson,* 396

U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969) and *First National Bank of Logan v. Walker Bank & Trust Company,* 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966), the Court is compelled to conclude that Plaintiffs are correct. In *Plant City, supra,* the Court stated:

Although the definition may not be a model of precision, in part due to its circular aspect, it defines the minimum content of the term "branch"; by use of the word "include" the definition suggests a calculated indefiniteness with respect to the outer limits of the term. However, the term "branch bank" at the very least includes *any* place for receiving deposits or paying checks or lending money apart from the chartered premises; it may include more. 396 U.S. at 135, 90 S.Ct. at 344.

This language convinces the Court that the Comptroller's determination that a CBCT is not a "branch bank, branch office, branch agency, additional office, or any branch place of business" on the grounds that a CBCT lacks certain physical characteristics of such facilities is without merit.

The Court also concludes that the Comptroller's determination that a CBCT does not receive deposits, cash checks or make loans is equally without merit. Although the ruling does not contain a precise definition of a CBCT, it has been stipulated that a CBCT permits an existing bank customer to initiate transactions resulting in a cash withdrawal from his account, a crediting of funds to his

---

5. Title 12 U.S.C. § 36(c), in relevant parts, provides as follows:

A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; and (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by

language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks. . . .

Title 12 U.S.C. § 36(f) provides:

The term "branch" as used in this section shall be held to include any branch bank, branch office, branch agency, additional office, or any branch place of business located in any State or Territory of the United States or in the District of Columbia at which deposits are received, or checks paid, or money lent.

account, a transfer between his checking account and savings account, and payment transfers from his account into accounts maintained by other bank customers. This transaction is accomplished through the use of a card issued to a bank customer and a keyboard by which the customer inserts information about the transaction. The CBCT facility transmits the information to the bank's computer by direct wire or by recording and storing the information by tape or other means.[6] In describing the definitional section of the Act, Representative McFadden stated:

> Any place outside of or away from the main office where the bank carries on its business of receiving deposits, paying checks, lending money, or transacting any business carried on at the main office, is a branch. 68 Cong. Rec. 5816 (1927).

Just as the Supreme Court found this language persuasive on their determination in *Plant City*, the Court is compelled to conclude that since a CBCT "transacts business which is carried on at the main office" it is a "branch" under the McFadden Act. By ruling that the Plaintiffs are entitled to summary judgment on the substantive issue presented by this case, it is unnecessary for the Court to rule upon the procedural propriety of the interpretive ruling.

Upon the foregoing, it is this 31st day of July, 1975,

Ordered, that Plaintiffs Capital Bank & Trust Company of Baton Rouge, Louisiana; Swift County Bank of Benson, Minnesota; Merchants State Bank of Dallas, Texas; Hartwick State Bank of Hartwick, Iowa; Rolfe State Bank of Rolfe, Iowa; The Callaway Bank of Fulton, Missouri; and Thomas C. Brickle, be and hereby are dismissed from this action on the grounds that requisite standing is lacking; and it is

Further ordered, that Defendant's Interpretive Ruling (39 F.R. 44416 (December 24, 1974)), as amended, (40 F.R. 21701 (May 19, 1975)), is null and void in that it violates the National Bank Act, 12 U.S.C. § 36(f); and cases thereunder; and it is

Further ordered that Defendant and all persons acting under his direction and authority or in active concert or participation with him be and hereby are, permanently enjoined from further implementation of the ruling, and any authority heretofore given to national banks by the ruling is hereby rescinded.

---

6. Stipulation, Exhibits "A" and "E".