536 F.2d 176
 19 UCC Rep.Serv. 537
 STATE OF ILLINOIS ex rel. Richard K. LIGNOUL, Commissioner
of Banks and Trust Companies, State of Illinois,
Plaintiff-Appellee, Cross-Appellant,
v.
CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF
CHICAGO, Defendant-Appellant, Cross-Appellee.
STATE OF ILLINOIS ex rel. Richard K. LIGNOUL, Commissioner
of Banks and TrustCompanies, State of Illinois,
Plaintiff-Appellee, Cross-Appellant,
v.
The FIRST NATIONAL BANK OF CHICAGO, Defendant-Appellant,
Cross-Appellee.
 Nos. 76-1083 to 76-1086.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 24, 1976.
Decided May 27, 1976.
 
 Ray H. Greenblatt, Chicago, Ill., for Continental Ill. Nat'l Bank.
 William J. Scott, Atty. Gen., Jerome Webb, Asst. Atty. Gen., Chicago, Ill., for State of Ill.
 Donald J. Yellon, Chicago, Ill., for First Nat'l Bank of Chicago.
 Samuel K. Skinner, U. S. Atty., Chicago, Ill., for amicus curiae.
 Before CLARK, Associate Justice,* and SWYGERT and BAUER, Circuit Judges.
 PER CURIAM.
 
 
 1
 These two cases consolidated for argument are among a series of six cases filed in the federal courts in the last year involving the question of whether off-premises electronic bank facilities known as Customer Banking Communication Terminals (CBCT) are branch banks within the meaning of the National Bank Act, 12 U.S.C. § 36(f).[1] See Independent Bankers Association of America v. Smith, 402 F.Supp. 207 (D.D.C.1975), affirmed March 23, 1976, 534 F.2d 921 (D.C.Cir.1976); State of Missouri ex rel. Kostman v. First National Bank in St. Louis, 405 F.Supp. 733, now on appeal in the Eighth Circuit; State of Colorado ex rel. Bloom v. First National Bank of Fort Collins, 394 F.Supp. 979 (D.Colo.1975), on appeal in the Tenth Circuit; and State of Oklahoma ex rel. State Banking Board v. Utica National Bank and Trust Company, 409 F.Supp. 71 (N.D.Okl.1975). In the latter two it was held that CBCT was not branch banking, while in the remaining four the opposite conclusion was reached. In the consolidated cases before us the district court held that the CBCT facility was a branch bank under § 36(f) except with regard to the withdrawing of cash by card and payments made on installment loans due the bank. These latter functions were held not to be branch banking and were, therefore, permissible; but where either deposits were made, checks were cashed or money was lent the CBCT operated as a branch and was impermissible under § 36(f), and the banks were permanently enjoined from using the system. A stay was granted pending appeal. We affirm the judgment of the district court save and except the holding that the withdrawing of cash and the payments on installment loans do not constitute branch banking, which we reverse.
 
 
 2
 Subsequent to the judgment in this case the opinion of the Court of Appeals for the District of Columbia in IBAA v. Smith, supra, came down which held that all of the functions performed by CBCT constituted branch banking, including both the withdrawing of cash and the payments made on installment loans due the bank. We have studied all of the opinions in these cases and have concluded that the opinion in IBAA v. Smith, supra, decides the issues involved correctly.
 
 
 3
 We see no need for an elaborate opinion in this case. Judge Will has ably covered the off-premises functions performed by CBCT as to deposits, cashing of checks and the loaning of money; Judge Wilkie in the IBAA v. Smith case has thoroughly canvassed the functions of the withdrawing of cash and the payment of installments on loans; in the latter respects we adopt the reasoning of his opinion but add the following comment as to the latter two functions.
 
 
 4
 The district court here based its conclusion on the functions of CBCT as to the withdrawing of cash and the payment of installments on loans upon the provisions of the Uniform Commercial Code (U.C.C.) and Ill.Rev.Stat. 26 § 3-104(2) which declares a check to be a negotiable instrument drawn on a bank and payable on demand; a writing signed by the maker or drawer and containing an unconditional promise or order to pay a sum certain in money; with negotiability being the essential characteristic of a check. From this the district court concluded that a card inserted into the CBCT machine to secure money was not the cashing of a check within the meaning of U.C.C. or in the common understanding of check cashing. We cannot agree. As was said in IBAA v. Smith, supra, this "is exhalting form over substance exactly what the Supreme Court instructed us not to do" in First National Bank v. Dickinson (Plant City), 396 U.S. 122 at 137, 90 S.Ct. 337, 24 L.Ed.2d 693 (1969). The check is merely the means used by the bank to attain the desired objective, i. e., the payment of the money to its customer. The card serves the same purpose as the check. It is an order on the bank. Any order to pay which is properly executed by a customer, whether it be check, card or electronic device, must be recognized as a routine banking function when used as here. The relationship between the bank and its customer is the same. Indeed, the trial court here recognized this when it characterized a CBCT withdrawal as the "functional equivalent" of a written check. And appellant Continental Bank gives the card transaction the same significance:
 
 
 5
 "The EFTS (Electronic Funds Transfer Systems) at issue in the present case are, extensions of the principle of immediate access to customer accounts in a manner dispensing with underlying paper such as checks." Emphasis added. See brief of the Bank supporting its motion for summary judgment, page 8 (No. 2027).
 
 
 6
 Moreover, although U.C.C. defines a check as a negotiable instrument, it also provides, Section 3-104(3):
 
 
 7
 "As used in other Articles of this Act, and as the context may require, the terms . . . 'check' . . . may refer to instruments which are not negotiable within this Article as well as instruments which are so negotiable."
 
 
 8
 Just as a transfer of funds by cable or telegraph is in law a check, Lourie v. Chase National Bank, 42 N.Y.S.2d 205 (Sup.Ct.N.Y.Co.1943), despite the non-negotiability of the cable, the card here for the purpose of withdrawing cash is a check. What must be remembered is that the foundation of the relationship between the bank and its customer is the former's agreement to pay out the customer's money according to the latter's order. See White and Summers, Uniform Commercial Code 1972 at 551. There are many ways in which an order may be given and one way of late is by computer record. Transport Indemnity Co. v. Sieb, 178 Neb. 253, 132 N.W.2d 871 (1965). And the Ninth Circuit accepts the same concept that computer impulses constitute sufficient writing to meet the order test. United States v. DeGeorgia, 9 Cir., 420 F.2d 889 (1969). Finally a CBCT order is a transaction that springs from a written agreement between the bank and its customer that clearly makes CBCT withdrawals a routine banking function performed at the main office and clearly within the branch definition as declared by Representative McFadden's own analysis of the Section at the time of its adoption:
 
 
 9
 "Sec. 7(f)(36(f)) defines the term 'branch'. Any place outside of or away from the main office, where the bank carries on its business of receiving deposits, paying checks, lending money, or transacting any business carried on at the main office, is a branch if it is legally established under the provisions of this Act." 68 Cong.Rec. 5816 (1927).
 
 
 10
 It, therefore, is plain to us that the cash withdrawal and payments on installment loans functions of the CBCT system are also business transactions carried on at the main office and are therefore within the branch definition of § 36(f).
 
 
 11
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 
 *
 Honorable Tom C. Clark, Associate Justice (Retired), Supreme Court of the United States, sitting by designation
 
 
 [1]
 McFadden Act, 12 U.S.C. § 36(f):
 The term "branch" as used in this section shall be held to include any branch bank, branch office, branch agency, additional office, or any branch place of business located in any State or Territory of the United States or in the District of Columbia at which deposits are received, or checks paid, or money lent.