STATE OF COLORADO ex rel. STATE BANKING BOARD et al., Plaintiffs-Appellants and Cross-Appellees,

v.

FIRST NATIONAL BANK OF FORT COLLINS, and James E. Smith, Comptroller of the Currency of the United States, Defendants-Appellees and Cross-Appellants,

and

the Conference of State Bank Supervisors as Amicus Curiae.

Nos. 75–1523, 75–1611, 75–1612.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 22, 1976.

Decided Aug. 20, 1976.

Affirmed in part, reversed in part and remanded.

Mary J. Mullarkey, First Asst. Atty. Gen., Denver, Colo. (J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., and Edward G. Donovan, Sol. Gen., Denver, Colo., on the brief), for plaintiffs-appellants and cross-appellees.

William H. Brown, Fort Collins, Colo., for First National Bank of Fort Collins, and Michael Kimmel, Dept. of Justice, Washington, D. C., for James E. Smith, Comptroller of the Currency (Ward H. Fischer, Fischer, Brown, Huddleson & Gunn, Fort Collins, Colo., for First National Bank of Fort Collins, and Rex E. Lee, Asst. Atty. Gen., Washington, D. C., James L. Treece, U. S. Atty., Denver, Colo., Ronald R. Glancz, Dept. of Justice, Washington, D. C., and C. Westbrook Murphy and Edward Jiran, Washington, D. C., of counsel, for the Comptroller of the Currency, on the brief), for defendants-appellees and cross-appellants.

James F. Bell, Washington, D. C. (Peter B. Work, Jones, Day, Reavis & Pogue, Washington, D. C., on the brief), for the Conference of State Bank Supervisors, as amicus curiae.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

This appeal concerns the efforts of the First National Bank of Fort Collins, Colora-

do to install an electronic banking facility, commonly known as a customer-bank communications terminal (CBCT), in a regional shopping center situate approximately two miles from its main bank building located in downtown Fort Collins. This CBCT permits the Bank's customers, through the use of a coded card, to transact any of the following: (1) deposit funds to the customer's account by placing checks or currency in an envelope and inserting the envelope into a slot in the face of the machine, tapping out the amount of the deposit on the face of the machine and pressing a button to indicate whether the deposit is to be credited to a checking or savings account; (2) withdrawing a pre-packaged packet of either $25 or $50 in currency from the machine and debiting such withdrawal to either the customer's checking or savings account, or charging it to a Master Charge Account or a Balance Plus Account; or (3) transferring funds from the customer's savings account to his checking account, or vice versa. See the trial court's memorandum opinion and order for a detailed statement as to the manner in which a CBCT functions. *Colorado ex rel. State Bank Board v. First National Bank,* 394 F.Supp. 979 (D.Colo.1975).

The First National Bank of Fort Collins, hereinafter called the Bank, is a national bank. On December 12, 1974, the Comptroller of Currency issued an interpretative ruling which allowed national banks to make available to their customers one or more CBCT's. In his ruling the Comptroller declared that the use of such devices at locations other than the main office did not constitute branch banking. Acting pursuant to the ruling of the Comptroller, the Bank, as above indicated, installed a CBCT in a shopping center two miles away from its offices in downtown Fort Collins.

The State of Colorado expressly prohibits branch banking, with the exception that, subject to certain conditions, a bank may maintain one detached facility within 3,000 feet of its premises. C.R.S. 1973, 11-6-101(1). The State of Colorado, acting through the State Board of Banking, determined, to its satisfaction, that the CBCT installed and operated by the Bank in the shopping center two miles removed from its main office was a branch bank and prohibited under both federal and state law.

It was in this general setting that the State of Colorado, *ex rel.* State Banking Board, brought the present proceeding against both the Bank and the Comptroller. The gravamen of the complaint was that the Bank was engaging in branch banking in violation of federal and state law and sought declaratory judgment and permanent injunction. A hearing on a preliminary injunction was by agreement treated as the hearing on permanent injunction.

The trial court concluded that the use of the Bank's CBCT for receiving deposits constituted branch banking in violation of 12 U.S.C. § 36, but that the other functions of the CBCT did not constitute branch banking and were valid under the Comptroller's interpretative ruling. Upon the Bank's assurances that it would follow the trial court's declaratory judgment without the necessity for an injunction, the trial court granted no injunctive relief.

■ The State Banking Board now appeals the judgment of the trial court that the withdrawal of money and the transfer of funds from a savings account to a checking account through the use of the CBCT does not constitute branch banking. The Bank and the Comptroller by cross-appeal challenge that part of the trial court's judgment which declared that the receipt of deposits by the CBCT violated the federal statute regarding branch banking.

The Comptroller, but not the Bank, challenges the standing of the plaintiffs to maintain the present proceeding. The trial court concluded that the plaintiffs did have standing to seek declaratory judgment, citing *United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); and *Jackson v. First National Bank of Valdosta,* 349 F.2d 71 (5th Cir.

1965). We agree that these plaintiffs have standing.

■ We also agree with the conclusion of the trial court that the off-premises CBCT, insofar as it receives deposits, constitutes branch banking in violation of 12 U.S.C. § 36. In this regard we, like the trial court, find the instant case to be controlled by *First National Bank in Plant City v. Dickinson,* 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969). In accord, *see Independent Bankers Association v. Smith,* 534 F.2d 921 (D.C.Cir. 1976); *Illinois ex rel. Lignoul v. Continental Illinois National Bank and Trust Co.,* 536 F.2d 176 (7th Cir. 1976), *petition for cert. filed,* 45 U.S.L.W. 3005 (U.S. June 30, 1976) (No. 75–1900); and *Missouri ex rel. Kostman v. First National Bank,* 538 F.2d 219 (8th Cir. 1976).

As indicated, the trial court additionally concluded that as concerns withdrawals and transfers, the Bank's off-premises CBCT was not acting as a branch bank, and that such did not offend 12 U.S.C. § 36. With this conclusion we are not in accord.

Since the trial court entered its judgment in the instant case, two Circuits have considered this precise matter, i. e., whether the withdrawal of funds from either a checking account or a savings account, or the transfer of funds from one to the other, through the use of an off-premises CBCT is in violation of the federal rule on branch banking. Both Circuits held that such is in violation of 12 U.S.C. § 36. We agree with the result reached by those Circuits. We feel no need to here elaborate on the matter. It is sufficient to say that we subscribe to *Independent Bankers Association v. Smith,* 534 F.2d 921 (D.C.Cir. 1976) and *Illinois ex rel. Lignoul v. Continental Illinois National Bank and Trust Co.,* 536 F.2d 176 (7th Cir. 1976), *petition for cert. filed,* 45 U.S.L.W. 3005 (U.S. June 30, 1976) (No. 75–1900).

The reasoning of the trial court in the instant case was that the *manner* in which Bank's CBCT permitted the withdrawal of pre-packaged packets of money, with a corresponding debit to the customer's checking or savings account, and also permitted the transfer of funds from one account to another, did not constitute "checks paid" or "money lent" as those terms are used in 12 U.S.C. § 36(f). Such reasoning in our view unduly emphasizes form at the expense of substance and fails to follow the admonition of the Supreme Court in *Dickinson* that "§ 36(f) must not be given a restrictive meaning that would frustrate the congressional intent this Court found to be plain in *Walker Bank [First National Bank of Logan v. Walker Bank & Trust Co.,* 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343]." The congressional intent referred to in *Walker Bank* was to place national and state banks in a position of "competitive equality" insofar as branch banking is concerned.

Actually, in our view it was not necessary for the trial court in the instant case to find that in permitting withdrawals and transfer of funds, the CBCT fit neatly and precisely into the traditional molds of "checks paid" or "money lent" as those terms are used in 36(f). That section declares that the term "branch" shall *include* any branch place of business where deposits are received or checks paid, or money lent. In this regard the Supreme Court in *Dickinson* commented as follows:

Although the definition may not be a model of precision, in part due to its circular aspect, it defines the minimum content of the term "branch"; by use of the word "include" the definition suggests a calculated indefiniteness with respect to the outer limits of the term. However, the term "branch bank" at the very least includes *any* place for receiving deposits or paying checks or lending money apart from the chartered premises; it may include more.

In line with the foregoing, then, accepting deposits, or paying checks, or lending money are not the only indicia of branch banking. The typical bank of the present time provides many other services. In this general regard the Supreme Court in *Dickinson* in a footnote at 396 U.S. 134, n. 8, 90 S.Ct. 343, quoted the following statement of

**500**

Representative McFadden concerning the definitional section of the Act:

> Any place outside of or away from the main office where the bank carries on its business of receiving deposits, paying checks, lending money, *or transacting any business carried on at the main office,* is a branch. (Emphasis added.)

 In our view, then, the withdrawal of funds and the transfer of funds from one account to another is a traditional banking transaction which comes well within the prohibition of the statute. And such, we believe, is true regardless of the particular technique used to accomplish the withdrawal or transfer.

Our holding here is in complete accord with the rationale of *First National Bank of Logan v. Walker Bank & Trust Co.,* 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966). There, as above mentioned, the Supreme Court held that the congressional intent behind the provisions of 12 U.S.C. § 36 was to place national and state banks on a basis of "competitive equality" as far as branch banking is concerned. Colorado law on branch banking precludes a state bank from maintaining off premises a machine of the type here sought to be used by the Bank. Accordingly, as concerns the use of off-premises CBCT's, we are by this opinion maintaining competitive equality in Colorado.

There is the suggestion that this is a form of customer service which is to the best interest of the banking public. Such may well be the case. However, this argument should be addressed to the legislative branch of government. The judiciary must apply the statutory law as it has been enacted.

The judgment insofar as it declares the receipt of deposits by the Bank's off-premises CBCT is in violation of 12 U.S.C. § 36 is affirmed. The judgment insofar as it declares the withdrawal of funds or the transfer of funds by the Bank's off-premises CBCT is not in violation of 12 U.S.C. § 36 is reversed. The case is remanded for further proceedings.