**ST. LOUIS COUNTY NATIONAL BANK et al., Appellees,**

v.

**MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION and James E. Smith, Comptroller of the Currency of the United States, Appellants.**

Nos. 76–1603, 76–1709.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1976.

Decided Dec. 16, 1976.

Rehearing Denied Jan. 31, 1976.

William G. Guerri, St. Louis, Mo., and Ronald R. Glancz, Atty., Dept. of Justice, Civil Div., Appellate Sec., Washington, D. C., for appellants.

Albert H. Hamel, Clayton, Mo., for St. Louis County Nat. Bank.

Irven L. Friedhoff, Div. of Finance, Jefferson City, Mo., for appellee William R. Kostman.

Robert F. Schlafly, St. Louis, Mo., for appellee Clayton Trust Co.

Before MARKEY, Chief Judge,[*] and STEPHENSON and HENLEY, Circuit Judges.

STEPHENSON, Circuit Judge.

Mercantile Trust Company National Association (Mercantile) appeals from the district court's[1] judgment which enjoined Mercantile from any further operation of its trust office in Clayton, Missouri. The two issues raised on this appeal are: (1) whether Mercantile's trust office is a branch within the meaning of 12 U.S.C. § 36, and (2) whether Mercantile's trust office constitutes a violation of 12 U.S.C. § 92a. We affirm.

Mercantile is a national banking association whose principal office is located in St. Louis, Missouri. Mercantile is engaged in the banking business and operates a trust department. In February of 1970 Mercantile opened a trust office in Clayton, Missouri, a suburb of St. Louis. Prior to opening the Clayton office, Mercantile received notice from the Comptroller of the Currency of the United States approving the establishment of the trust office as long as deposits were not accepted, loans made, or checks paid. According to the Comptroller, if deposits were accepted, loans made, or checks paid, then the trust office would fall within the definition of a branch as set forth in 12 U.S.C. § 36(f) and a certificate of approval from the Comptroller's office would be needed.

On the date that Mercantile opened its trust office Mercantile issued a press release stating that the trust office would provide added convenience for existing as well as future customers. Five full-time employees of Mercantile staffed the Clay-

ton office. From the spring of 1970 until March of 1973 the overall administration of approximately 500 living and testamentary trusts, managing agency and safekeeping accounts were handled by a trust administrative officer at the trust office. During this period no checks were paid, no money was lent, and no deposits were received at the Clayton trust office. The Clayton office was not a separate corporation but rather an office operated by Mercantile as part of its organization.

This action was commenced by St. Louis County National Bank for a declaratory judgment that Mercantile's Clayton trust office was illegal. An injunction was also sought against Mercantile's continued use of the Clayton office. James E. Smith, the then-Comptroller of the Currency of the United States, was joined with Mercantile as a defendant. Clayton Trust Company and William R. Kostman, Director of the Division of Finance for the state of Missouri, were permitted to intervene as plaintiffs.

One June 18, 1976, the district court enjoined and restrained Mercantile from further operating its branch trust office. On August 2, 1976, our court granted Mercantile's application to suspend injunction pending appeal until further order of the court. After a hearing on August 5, 1976, our court ordered that the injunction be stayed until further order of the court.

Appellant Mercantile's first contention is that its Clayton trust office does not constitute a branch as defined by 12 U.S.C. § 36(f). The question concerning whether the trust office is a branch is important since a branch may be established only when, where, and how state law would authorize a state bank to establish and operate such a branch. 12 U.S.C. § 36(c);[2]

---

[*] The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

2. 12 U.S.C. § 36(c) provides in relevant part:

(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; and (2) at any point within the State in which said

*First Nat'l Bank v. Dickinson,* 396 U.S. 122, 130, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969); *First Nat'l Bank of Logan v. Walker Bank & Trust Co.,* 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966). In this case it is clear that a state chartered bank would be unable to operate the same type of facility as Mercantile's Clayton trust office. *See St. Louis Union Trust Co. v. Pemberton,* 494 S.W.2d 408 (Mo.App.1973). Therefore, if the Clayton office is a branch under 12 U.S.C. § 36(f), it would be illegal under 12 U.S.C. § 36(c).

Section 36(f) defines a branch as follows:

The term "branch" as used in this section shall be held to include any branch bank, branch office, branch agency, additional office, or any branch place of business located in any State * * * at which deposits are received, or checks paid, or money lent.

Appellant Mercantile's argument simply stated is that since no deposits are received, or checks paid, or money lent at the Clayton trust office, it is not a branch. Recent cases interpreting section 36(f) have cautioned, however, about giving the definition of branch a too restrictive meaning.

Chief Justice Burger has observed for the Supreme Court that:

[W]hile Congress has absolute authority over national banks, the federal statute has incorporated by reference the limitations which state law places on branch banking activities by state banks. Congress has deliberately settled upon a policy intended to foster "competitive equality." * * * State law has been utilized by Congress to provide certain guidelines to implement its legislative policy.

\* \* \* \* \* \*

[The] Act reflects the congressional concern that neither system have advantages over the other in the use of branch banking.

\* \* \* \* \* \*

The mechanism of referring to state law is simply one designed to implement that congressional intent and build into the federal statute a self-executing provision to accommodate to changes in state regulation.

\* \* \* \* \* \*

In short, the definition of "branch" in § 36(f) must not be given a restrictive meaning which would frustrate the congressional intent this Court found to be plain in *Walker Bank, supra.*

\* \* \* \* \* \*

Because the purpose of the statute is to maintain competitive equality, it is relevant in construing "branch" to consider, not merely the contractual rights and liabilities created by the transaction, but all those aspects of the transaction that might give the bank an advantage in its competition for customers.

*First Nat'l Bank v. Dickinson, supra,* 396 U.S. at 131, 133, 134, 136–37, 90 S.Ct. at 342, 343, 345 (citations and footnote omitted).

In this circuit we have likewise recognized that "The preservation of competitive equality is the pervasive underlying principle of the McFadden Act." *Nebraskans for Independent Banking, Inc. v. Omaha Nat'l Bank,* 530 F.2d 755, 759 (8th Cir.) (citation omitted), *vacated and remanded for reconsideration in light of subsequent state legislation,* 426 U.S. 310, 96 S.Ct. 2616, 48 L.Ed.2d 658 (1976). Further, we have stated "It is settled that the McFadden Act, which, as amended, is the controlling statute here, was 'intended to place national and state banks on a basis of "competitive equality" insofar as branch banking was concerned.'" *Driscoll v. Northwestern Nat'l Bank,* 484 F.2d 173, 175 (8th Cir. 1973) (citations omitted).

Similarly, the Tenth Circuit has stated:

[Section 36(f)] declares that the term "branch" shall *include* any branch place of business where deposits are received or

---

association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting

such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks.

checks paid, or money lent. In this regard the Supreme Court in *Dickinson* commented as follows:

> Although the definition may not be a model of precision, in part due to its circular aspect, it defines the minimum content of the term "branch"; by use of the word "include" the definition suggests a calculated indefiniteness with respect to the outer limits of the term. However, the term "branch bank" at the very least includes *any* place for receiving deposits or paying checks or lending money apart from the chartered premises; it may include more.

In line with the foregoing, then, accepting deposits, or paying checks, or lending money are not the only indicia of branch banking. The typical bank of the present time provides many other services.

*State of Colorado ex rel. State Banking Board v. First Nat'l Bank of Fort Collins,* 540 F.2d 497, 499 (10th Cir. 1976).

Likewise, the District of Columbia Circuit has recently observed:

> After the Act's passage, Representative McFadden placed in the Congressional Record a section-by-section analysis of the statute. In this analysis he described the scope of section 36(f)'s definition as follows:
>
>> [Section 36(f)] defines the term "branch." *Any place outside of or away from the main office* where the bank carries on its business of receiving deposits, paying checks, lending money, or *transacting any business carried on at the main office,* is a branch if it is legally established under the provisions of this act.
>
> \*   \*   \*   \*   \*   \*
>
> Clearly, Congress intended to include within its definition not only the typical brick-and-mortar branch bank, but also lesser bank agencies which provide only some of the services available at a traditional branch, *i. e.,* agencies which accept deposits, cash checks, lend money, or transact any business generally carried on at the main office.

*Independent Bankers Ass'n of America v. Smith,* 534 F.2d 921, 931–32 (D.C. Cir. 1976) (footnote omitted).

■ In light of the legislative history of section 36(f) and recent case interpretation of that section, we conclude that the three routine banking functions delineated in section 36(f) are not the only indicia of branch banking. In our view each case must be considered on its own facts to determine if a branch exists. *North Davis Bank v. First Nat'l Bank,* 457 F.2d 820, 824 (10th Cir. 1972).

■ Turning to the record before us we note that Mercantile's main office in St. Louis conducts a substantial amount of trust business.[3] The activities performed by Mercantile at its Clayton office are summarized as follows: (1) consults with customers and prospective customers about the trust services offered by Mercantile; (2) discusses accounts with principals and beneficiaries of existing trusts; (3) reviews with customers and their representatives proposed trust instruments; (4) provides a place for persons to execute wills and trusts which named Mercantile as fiduciary; (5) reviews wills on file for present customers; and (6) researches estate and trust problems and discusses such problems with customers and their representatives. It is apparent that these enumerated activities are also carried on routinely at Mercantile's main office. This alone would clearly bring Mercantile's Clayton office within the branch definition as declared by Representative McFadden's own analysis of section 36(f) at the time of its adoption. *See State of Ill. ex rel. Lignoul v. Continental Ill. Nat'l Bank and Trust Co.,* 536 F.2d 176, 178–79 (7th Cir. 1976). Furthermore, the permanent staff's duties are to obtain new customers for the trust department of Mercantile. The service offered increase the convenience to Mercantile's customers. In light of these factors, we hold that the

---

**3.** Mercantile held nearly two billion dollars of fiduciary assets as of December 31, 1973.

720

establishment of ·such a permanent place of business as undertaken by Mercantile is a branch as contemplated by section 36(f). It should be emphasized that this holding is based on our interpretation of the language of section 36(f) as explained by its own author's·analysis, .its construction given by other courts, and the purpose for its Congressional enactment. We do not rely on the state of Missouri's definition of branch in determining the content of branch in section 36(f).

■ Our holding is reinforced by 12 U.S.C. § 92a. Section 92a(a) reads as follows:

(a) The Comptroller of the Currency shall be authorized and empowered to grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.

Section 92a(b) reads as follows:

(b) Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of State or local law within the meaning of this section.

The policy of competitive equality was incorporated into section 92a. *Blaney v. Florida Nat'l Bank*, 357 F.2d 27, 30 (5th Cir. 1966); *American Trust Co. v. South Carolina State Board of Bank Control*, ·381 F.Supp. 313, 323 (D.S.C.1974); *New Hampshire Bankers Ass'n v. Nelson*, 336 F.Supp. 1330, 1334 (D.N.H.), *aff'd*, 460 F.2d 307 (1st Cir.), *cert. denied*, 409 U.S. 1001, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972). It is equally

clear that a state bank in Missouri would be prohibited from operating more than one place of business for the exercise of fiduciary powers. Mo.Ann.Stat. §§ 362.105 subd. 1(1) and 362.107 subd. 2(5) (Vernon); *St. Louis Union Trust Co. v. Pemberton, supra.* Therefore, to allow Mercantile to accomplish what a state bank could not would frustrate the purpose of section 92a.

The First Circuit, in construing section 92a, stated:

Implicit in the state's power to proscribe national banks from acting as executors, we think,·is the power to permit them to act as executors while precluding them, in .a nondiscriminatory way, from advertising that fact.

*New Hampshire Bankers Ass'n v. Nelson, supra,* 460 F.2d at 308. Similarly, we conclude that the state's power to nondiscriminately limit the location where fiduciary powers may be exercised is implicit in the state's power to proscribe national banks from acting as executors. It follows that Mercantile's exercise of fiduciary powers at its Clayton trust office is in contravention of state law within the meaning of section 92a.

Affirmed.

HENLEY, Circuit Judge (dissenting).

The majority holds that in view of Missouri's restrictions on branch operations by Missouri banks and trust companies, including "pure" trust companies, Mercantile Trust Company, a national bank, is prohibited by virtue of the McFadden Act of 1927, 12 U.S.C. § 36, and the Act of September 28, 1962, P.L. 87–722, 76 Stat. 668, 12 U.S.C., Cum.Supp., § 92a, from operating the trust office in Clayton, Missouri, which office is fully described in the record and in the opinion of the majority. I respectfully disagree.

My dissent is based in part on the fact that it ·seems to me that in determining that the trust office in question is a "branch" within the meaning of 12 U.S.C. § 36(f) the majority is following the line of reasoning that two of my colleagues and I were not able to accept in *Nebraskans for*

*Independent Banking, Inc. v. Omaha Nat'l Bank,* 530 F.2d 755 (8th Cir.), *remanded* for further consideration in the light of supervening Nebraska legislation, 426 U.S. 310, 96 S.Ct. 2616, 48 L.Ed.2d 658 (1976).[1] I refer specifically to the concurring opinion of Judge Lay, 530 F.2d at 764, and to the dissenting opinion of Judge Webster in which I joined, 530 F.2d at 764–67.

As the majority concedes, the question of whether a given financial facility is a "branch" within the meaning of § 36(f) is a federal question and is not controlled by state ideas of what constitutes a branch bank or other financial institution. We recognized that principle in *State of Missouri ex rel. Kostman v. First Nat'l Bank in St. Louis,* 538 F.2d 219 (8th Cir. 1976), wherein we held that so-called customer-bank, communications terminals operated off premises by a national bank constituted "branches" within the meaning of § 36(f) since they were capable at least of accepting deposits and causing them to be credited to the accounts of the depositors.

Conceding arguendo that it is possible for a facility maintained by a national bank to be a branch even though it does not receive deposits, cash checks, or make loans, I do not think that it can be said that a facility is a branch within the meaning of § 36(f) merely because it may perform some function or furnish some service, other than accepting deposits, cashing checks and making loans, which banks customarily provide.

When the McFadden Act was passed in 1927, it was well known to Congress that the operation of trust departments and the furnishing of trust services was not an insignificant part of the business of banks, and I feel that if Congress had intended to include in its definition of a "branch" a trust office such as the one involved in this case, it would have said so just as it specifically mentioned the accepting of deposits, the cashing of checks, and the lending of money.

While what is now § 92a authorizes national banks to offer fiduciary services to the same extent that they may be offered by state banks or trust companies, § 92a says nothing about where such services may be offered by national banks, nor does it limit the number of places at which such services may be offered.

It should be kept in mind that §§ 36 and 92a were not passed by Congress for the purpose of restricting the operations of national banks. Rather, they were passed for the purpose of enabling national banks to compete with state banks on at least a plane of equality. For example, the McFadden Act itself was obviously the aftermath of the holding of the Supreme Court in *First Nat'l Bank in St. Louis v. State of Missouri,* 263 U.S. 640, 44 S.Ct. 213, 68 L.Ed. 486 (1924), that as the law then stood national banks could not operate branches, a situation which placed them at a competitive disadvantage in relation to state banks in states that permitted branching.

In the last analysis, the question of whether a national bank can lawfully perform a given function at a given place is a question of federal law, although in this context, as in others, state law may supply the governing federal law or may be considered as the source of federal law. *See First Nat'l Bank in St. Louis v. State of Missouri, supra,* 263 U.S. at 656, 44 S.Ct. 213, and *McClellan v. Chipman,* 164 U.S. 347, 357, 17 S.Ct. 85, 41 L.Ed. 461 (1896).

But, unless Congress has so prescribed, a national bank is not prohibited from engaging in a particular activity at a particular place simply because a state bank or other financial institution cannot under state law engage in the same activity at the same place or in the same circumstances.

The Missouri statutes[2] dealing with banks and trust companies do not purport

---

1. Following receipt of the mandate of the Supreme Court, this court remanded the case for further consideration by the district court, 539 F.2d 673 (8th Cir. 1976).

2. V.A.M.S. § 362.105(1) provides that no bank or trust company in Missouri shall maintain a branch bank or trust company or receive deposits or pay checks except in its own banking

to regulate or restrict the activities of national banks as such. Nor could Missouri constitutionally forbid a national bank to do what it is permitted to do by governing federal law. If it happens that a national bank can do something that a state ·bank cannot do, it is open to the state to broaden the authority of its own institutions to match that of the federal ones.[3]

In sum, I agree with Mercantile and with the Comptroller that Mercantile's trust office in Clayton is not a branch, and that its continued operation is not prohibited by the McFadden Act or by § 92a.

house otherwise than is provided in § 362.107. The section last mentioned permits Missouri banks to operate certain drive-in facilities within the cities in which the banks are domiciled. Section 362.107 is not involved in this case.

**3.** Indeed, while the *Omaha Nat'l Bank* case that has been mentioned was pending, the Nebraska legislature adopted a bill that may permit Nebraska state banks to do what the Omaha National Bank was doing. It was that legislation that caused the Supreme Court to remand the case for further consideration in the light of the enactment.