STATE BANK OF FARGO, a North Dakota State Banking Association, Appellant,

v.

The MERCHANTS NATIONAL BANK AND TRUST COMPANY OF FARGO, a National Banking Association, and John G. Heiman, Comptroller of the Currency, Appellees.

No. 78–1505.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1979.

Decided Feb. 28, 1979.

---

Ronald H. McLean of Tenneson, Serkland, Lundberg, Erickson, Leclerc & Marcil, Fargo, N. D., argued and on brief, for appellant.

David A. Ranheim of Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn. (argued), J. David Jackson, Minneapolis, Minn., and Frank J. Magill of Nilles, Hansen, Selbo, Magill & Davies, Fargo, N. D., on brief, for appellees.

Before MATTHES, Senior Circuit Judge, HENLEY, Circuit Judge, and NANGLE, District Judge.*

---

* The Honorable John F. Nangle, United States District Judge, Eastern District of Missouri, sitting by designation.

HENLEY, Circuit Judge.

This branch banking case, which comes to us from the United States District Court for the District of North Dakota,[1] involves the right of a national bank domiciled in the State just mentioned to operate under authority issued by the Comptroller of the Currency of the United States machines known as customer electronic funds transfer centers, commonly referred to as CBCT's, which machines can perform a number of banking services at any hour of the day or night and on holidays without personal contact between a bank customer and bank personnel and without the customer physically entering the bank's place of business.

The plaintiff in the district court was the State Bank of Fargo, a banking institution chartered under the laws of North Dakota and governed by state statutes and regulations. Plaintiff will at times be referred to herein as "State Bank." The defendants were The Merchants National Bank and Trust Company of Fargo (Merchants), a national bank, and the Comptroller of the Currency. Merchants is subject to the provisions of the National Bank Act, 12 U.S.C. § 21 *et seq.*, and is subject to the regulatory jurisdiction of the Comptroller.

The object of the suit is to prohibit Merchants from operating in the City of Fargo two CBCT's under initial authority granted by the Comptroller in 1976 and under branch bank authority issued by him in 1977. Plaintiff sought appropriate declaratory and injunctive relief.

In due course the defendants moved for summary judgment pursuant to Fed.R. Civ.P. 56(b). On May 31, 1978 Judge Benson filed a full memorandum opinion in which he held that Merchants was entitled to operate the machines and that the defense motions for summary judgment should be granted. *State Bank of Fargo v. Merchants Nat'l Bank & Trust Co. of Fargo*, 451 F.Supp. 775 (D.N.D.1978). A final

judgment in favor of the defendants having been entered, this appeal followed.

■ As the law stood when Judge Benson decided the case and as it stands today, a national bank is permitted to operate at the discretion of the Comptroller one or more CBCT's. However, the right or privilege of a national bank to operate such a machine at a given place or in a given state is limited by the branch banking provisions appearing in 12 U.S.C. §.36(c). That statute provides generally that a national bank may not operate a branch in circumstances or at locations within a state in or at which a state chartered bank would not be permitted under state law to operate a branch.

For reversal, State Bank contends that in view of relevant provisions of North Dakota law the Comptroller was forbidden by 12 U.S.C. § 36(c) to authorize the maintenance and operation of the CBCT's involved in the case. The district court rejected that contention, and the district court also found with respect to the particular machines in question that the Comptroller did not act arbitrarily or capriciously or abuse his administrative discretion when he authorized the maintenance and use of the machines.[2]

Prior to the adoption of the so-called McFadden Act of 1927, which was an amendment to the National Bank Act, national banks were not permitted to engage in branch banking. The 1927 statute permits national banks to establish branches with the approval of the Comptroller but subject to the important limitation that a national bank domiciled in a given state cannot establish a branch unless a state chartered bank in the same state could establish a branch at the location or in the area involved. And, as indicated, it is on that limitation that State Bank relies in this case.

■ Whether a national bank may establish and operate a branch in a given state or

1. The Honorable Paul Benson, Chief Judge.

2. We do no understand that that particular holding is questioned by State Bank on this

appeal. The position of State Bank is simply that the Comptroller has no right to authorize the use of any CBCT by any national bank at any location in North Dakota.

at a particular point in that state is governed by state law. *First Nat'l Bank of Logan v. Walker Bank & Trust Co.,* 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966). But the question of whether a particular operation or facility of a national bank constitutes a "branch bank" is a question of federal law. *First Nat'l Bank in Plant City v. Dickinson,* 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969).

Recent years have been characterized by increasing competition between banks and between banks and other types of financial institutions. Those years have also been characterized by tremendous advances in electronic technology including the development of CBCT's and similar machines.

Efforts on the part of national banks to establish branches are frequently opposed both by state bank and other national banks, and problems connected with branch banking have frequently come before this court, and others, in recent years. Our recent decisions include *Dakota Nat'l Bank & Trust Co. v. First Nat'l Bank of Fargo,* 554 F.2d 345 (8th Cir.), *cert. denied,* 434 U.S. 877, 98 S.Ct. 229, 54 L.Ed.2d 157 (1977); *St. Louis County Nat'l Bank v. Mercantile Trust Co., N. A.,* 548 F.2d 716 (8th Cir. 1976), *cert. denied,* 433 U.S. 909, 97 S.Ct. 2975, 53 L.Ed.2d 1093 (1977); *State of Missouri ex rel. Kostman v. First Nat'l Bank,* 538 F.2d 219 (8th Cir.), *cert. denied,* 429 U.S. 941, 97 S.Ct. 357, 50 L.Ed.2d 310 (1976); *Nebraskans For Independent Banking v. Omaha Nat'l Bank,* 530 F.2d 755 (8th Cir.), *vacated and remanded,* 426 U.S. 310, 96 S.Ct. 2616, 48 L.Ed.2d 658 (1976); *Merchants & Planters Bank of Newport v. Smith,* 516 F.2d 355 (8th Cir. 1975).

CBCT's began to be used in financial operations probably in the early 1970's or late 1960's, and they are now used by both national and state banks. Essentially similar machines known as Remote Service Units or RSU's are also used by financial institutions like savings and loan associations and credit unions. The use of RSU's by federally chartered savings and loan associations has been authorized since 1974 by regulations appearing as 12 C.F.R. § 545.-4-2 and promulgated by the Federal Home Loan Bank Board. And the National Credit Union Administration has permitted at least some federal credit unions to use RSU's since the year last mentioned. 12 C.F.R. § 721.3.

Banks that are in a position to offer CBCT services to their customers advertise that fact extensively, and such banks are obviously of the opinion that their ability to provide the services gives them some competitive advantages over banks that cannot or do not offer the services.

■ Ever since CBCT's came on the scene, the Comptroller has claimed and exercised the power to limit and regulate their use by national banks. However, he did not prior to mid or late 1976 consider the machines to be "branch banks." In *Independent Bankers Ass'n of America v. Smith,* 175 U.S.App.D.C. 184, 534 F.2d 921, *cert. denied,* 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 141 (1976), it was held that in view of the fact that a CBCT can accept deposits and disburse funds, it falls within the definition of a branch bank that appears in 12 U.S.C. § 36(f). This court came to the same conclusion in *State of Missouri ex rel. Kostman v. First Nat'l Bank, supra.* Following the holding in *Independent Bankers, supra,* the Comptroller abandoned his original position, and it is now settled beyond question that when a national bank makes use of a CBCT, it is engaging in "branch banking,"[3] at least where the CBCT is located away from the bank's main business premises, which is the case here.

■ The ultimate question before the district court was, and the ultimate question before us is whether under North Dakota law a state bank chartered by the State of North Dakota could lawfully operate the machines that merchants has been authorized to operate. While that question

---

**3.** Regulations governing the use of CBCT's by national banks appear in 12 C.F.R. §§ 4.5a, 5.2a and 5.4a.

is one of state law, it is complicated by the fact that the relevant North Dakota statute presently to be mentioned makes reference to federal law to some extent, and that the National Bank Act refers to state banking law. In other words we have a problem that resembles the *renvoi* situation that is not infrequently encountered in the field of conflicts of laws.

As pointed out by Judge Benson, the public policy of North Dakota with respect to branch banking has been restrictive, and generally North Dakota banks are not permitted to engage in off premises operations except to a limited extent; and as of 1975 the powers of banks chartered under North Dakota law did not permit them to operate CBCT's. *See* 451 F.Supp. at 779 and 788; *see also Dakota Nat'l Bank & Trust Co. v. First Nat'l Bank of Fargo, supra,* 554 F.2d at 354, cited by the district court.

As we have seen, the original position taken by the Comptroller was that the maintenance and operation of a CBCT by a national bank did not constitute branch banking, and, therefore, national banks could be authorized to use CBCT's without regard to state laws dealing with branch banking by state chartered banks.

That position seems to have caused understandable concern among "state bankers" in North Dakota fearing competition with national banks which might be permitted to use CBCT's while state chartered banks would not be permitted to use them. The state bankers may also have been concerned by the use or possible use of RSU's by federal savings and loan associations and by federal credit unions.[4]

That concern or apparent concern generated a response by the North Dakota Legislature which in 1975 adopted what now appears as Subsection 8 of N.D.Cent.Code § 6–03–02.

That section defines the powers of banks chartered under North Dakota law, and Subsection 8 provides that state banks may provide services to its customers involving electronic transfers of funds "to the same extent that other financial institutions chartered and regulated by any agency of the federal government are permitted to provide such services within this state. . . ." The subsection stipulates that a CBCT is not to be considered to be a "branch," a "paying and receiving station," or a "separate facility," but simply as a "customer electronic funds transfer center" which may be established subject to rules and regulations that the state banking board may adopt. The subsection also states that if a bank establishes an off premises CBCT, the facility must be available to customers of any other bank which may request that the facility be made available to its customers with the cost of the operation to be shared between the banks involved.[5]

The district judge discussed the problem before him under a number of headings including the applicable standard for the review by the courts of rulings of the Comptroller; North Dakota CBCT Banking; CBCT Banking by National Banks in North Dakota; and Other Federal Financial Institutions Permitted to Provide CBCT Services. 451 F.Supp. at 785–91.[6]

There is nothing to be gained by our undertaking to expand in any appreciable measure or to improve upon Judge Benson's excellent discussion of the issues in the case. He gave thorough consideration to the North Dakota statute, to the regulations that have been promulgated under it, and to available legislative history. He concluded that under § 6–03–02(8) a North Dakota

---

4. There can be no question that federal savings and loan associations operate in North Dakota, and Judge Benson took judicial notice of the fact that federal credit unions also operate there. 451 F.Supp. at 790, n. 32.

5. Regulations implementing Subsection 8 were duly promulgated by the banking board on July 28, 1976 and appear in N. D. Register 6–03–02(8). Much of the text of the regulations is

set out in the opinion of the district court. *See* 451 F.Supp. at 780–82.

6. We have no problem with the district court's delineation of the appropriate review standard, and it is clear also that the district court correctly recognized limitations on the granting of summary judgment under Rule 56.

state bank can lawfully make use of a CBCT if any federal financial institution, including a savings and loan association or federal credit union, would be permitted to make use of CBCT's or RSU's in North Dakota.

The district judge found that when Merchants' branching application was approved in 1977, both federal savings and loan associations and federal credit unions were being permitted to use RSU's in their operations. 451 F.Supp. at 784, n.14. And he found that at the time of decision in 1978 federal credit unions were still being permitted to use RSU's. 451 F.Supp. at 790, including n.32 and n.33.

To the finding last mentioned we will add with respect to federal savings and loan associations that the regulations permitting them to use RSU's were theoretically temporary during earlier years; however, the authorizations were periodically continued in force and were finally made permanent in late May, 1978. 43 Fed.Reg. 22929. And as far as we know, the original "temporary" authority to federal credit unions to use RSU's has never been revoked.

We accept the district court's construction of the North Dakota statute here involved, and since federal savings and loan associations and federal credit unions are still permitted to use RSU's in North Dakota, it follows that North Dakota state banks may use CBCT's. Hence, the Comptroller was not forbidden by 12 U.S.C. § 36(c) to authorize Merchants to maintain and operate its Fargo CBCT's as "branch banks." [7]

The judgment of the district court is affirmed.

7. As heretofore noted, we do not consider that State Bank is now complaining about the ad hoc determination of the Comptroller that Merchants should be permitted to maintain and operate the two particular machines here involved. Assuming, however, that such a question is before us, as it was before the district court, we are satisfied that the district court answered it correctly.