765 F.2d 1196
 247 U.S.App.D.C. 42, Fed. Sec. L. Rep. P 92,210
 SECURITIES INDUSTRY ASSOCIATION
v.
COMPTROLLER OF THE CURRENCY, et al., Appellants.
SECURITIES INDUSTRY ASSOCIATION, Appellant,
v.
C.T. CONOVER Comptroller of the Currency, Office of the
Comptroller of the Currency.
 Nos. 84-5026, 84-5085.
 United States Court of Appeals,
District of Columbia Circuit.
 July 12, 1985.
 
 Before ROBINSON, Chief Judge, and WRIGHT, TAMM, WALD, MIKVA, EDWARDS, GINSBURG, BORK, SCALIA and STARR, Circuit Judges.
 ORDER
 PER CURIAM.
 
 
 1
 The suggestions for rehearing en banc of Security National Bank and the Comptroller of the Currency have been circulated to the full Court. A majority of the judges of the court in regular active service have not voted in favor thereof. Upon consideration of the foregoing, it is
 
 
 2
 ORDERED, by the Court en banc, that the suggestions are denied.
 
 
 3
 Chief Judge SPOTTSWOOD W. ROBINSON, III, and Circuit Judge WALD did not participate in this order.
 
 
 4
 A dissenting statement of Circuit Judge SCALIA, joined by Circuit Judges BORK and STARR, is attached.
 
 
 5
 Prior Report: 577 F.Supp. 252 (D.C.D.C.1983), affd. 758 F.2d 739 (D.C.Cir.1985).
 
 
 6
 SCALIA, Circuit Judge, with whom Circuit Judges BORK and STARR join, dissenting:
 
 
 7
 The panel opinion, 758 F.2d 739, in this case upheld the judgment of the District Court, in a suit brought by an association of brokerage houses, that the Comptroller violated sections 7(c) and 8 of the McFadden Act, 12 U.S.C. Secs. 36(c), 81 (1982), in permitting national banks to conduct discount brokerage operations at locations other than their main banking offices and authorized branches.
 
 
 8
 The McFadden Act restricts only the location and not (unlike the Glass-Steagall Act, ch. 89, 48 Stat. 162 (1933) (codified as amended in scattered sections of 12 U.S.C. (1982)) the nature of bank activities. It is uncontroverted that its purpose was to establish competitive equality between state and federal banks by authorizing branching by federally chartered banks to the same extent as permitted to state banks by state law. Thus, state banks (and state banking commissions) are obviously within the zone of interests protected by the statute--but the brokerage houses suing in the present case are no more within it than are businesses competing for the parking spaces that an unlawful branch may occupy.
 
 
 9
 More importantly, however, the District Court, whose reasoning was adopted by the panel opinion, did not, in my view, base its standing decision merely on this erroneous construction of the language and purpose of the McFadden Act. My reading of the District Court opinion is that the Securities Industry Association's members (1) would have standing to sue under the Glass-Steagall Act, which restricts the scope of activities that national banks can engage in, and (2) would be actually harmed by attempts by national banks to exceed the locational curbs of the McFadden Act. This entirely reduces the "zone of interest" inquiry under the McFadden Act to an inquiry into "injury in fact," as the conclusion of the McFadden Act standing portion of the opinion demonstrates:
 
 
 10
 To be sure, the McFadden Act restricts national banks not in the type of business they may conduct but where they may conduct it. Still, attempts to exceed those curbs would harm SIA's members just as the data processors in Data Processing [Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) ] and the tour operators in Arnold Tours [v. Camp, 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970) ]. Accordingly, SIA is arguably within the zone of interests sought to be protected by the Act.
 
 
 11
 Securities Industry Ass'n v. Comptroller of the Currency, 577 F.Supp. 252, 258-59 (D.D.C.1983). But neither standing under the Glass-Steagall Act (a statute the functional equivalent of which was at issue in Data Processing and Arnold Tours ) nor injury in fact--nor the two combined--suffice to satisfy the zone of interests test under the McFadden Act. Thus, the District Court opinion holds either that standing under one statute confers standing to raise challenges under a separate statute--which is inconsistent with Tax Analysts & Advocates v. Blumenthal, 566 F.2d 130, 140-41 (D.C.Cir.1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978), and indeed with the whole principle behind the zone test--or that injury in fact is sufficient to confer standing--which discards the zone test entirely.
 
 
 12
 On the merits, too, the District Court's--and thus the majority's--conclusion that discount brokerage offices operated by national banks are branches seems mistaken. The McFadden Act defines a branch to "include" any place "at which deposits are received, or checks paid, or money lent," 12 U.S.C. Sec. 36(f) (1982), which plainly does not describe a discount brokerage office. The District Court found, however, that the statutory definition of branches is not limited to offices performing one or more of these enumerated functions, basing this conclusion on remarks by Rep. McFadden made after passage of the Act, an opinion of the Eighth Circuit (followed nowhere else) finding trust offices to be branches, St. Louis County National Bank v. Mercantile Trust Company National Ass'n, 548 F.2d 716 (8th Cir.1976), cert. denied, 433 U.S. 909, 97 S.Ct. 2975, 53 L.Ed.2d 1093 (1977), and dicta in First National Bank in Plant City v. Dickinson, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969). It seems to me, however, that the Plant City dicta are virtually dispositive in favor of the Comptroller. The Court said:
 
 
 13
 Although the definition may not be a model of precision in part due to its circular aspect, it defines the minimum content of the term "branch" by use of the word "include." The definition suggests a calculated indefiniteness with respect to the outer limits of the term. However, the term "branch bank" at the very least includes any place for receiving deposits or paying checks or lending money apart from the chartered premises; it may include more.
 
 
 14
 396 U.S. at 135, 90 S.Ct. at 344 (emphasis added). It seems to me that a statute containing a "calculated indefiniteness" presents precisely the situation in which our deference to the agency should be at its height. See Chevron, USA, Inc. v. NRDC, Inc., --- U.S. ----, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The Comptroller's conclusion that discount brokerage houses do not fall within the range of indefiniteness--or indeed that the range includes only the enumerated functions--cannot by any means be considered unreasonable, even if we think it mistaken.
 
 
 15
 This circuit plays a leading role in formulating banking law, and administrative law generally, and this case squarely presents important questions in both areas. I think it should have been heard by the full court.